## ARKANSAS STATE HIGHWAY COMM'N v. Dan R. DIPERT et ux

5-5424                                     463 S. W. 2d 388

Opinion delivered February 22, 1971

*Thomas B. Keys* and *Philip N. Gowen,* for appellant.

*Clark, Clark & Clark* and *Jones, Stratton & Jones,* for appellees.

FRANK HOLT, Justice. In this condemnation proceeding a jury awarded appellees $15,000 for a strip of their land, used for commercial purposes, which was taken by appellant as additional right-of-way for U. S. Highway No. 65 in Damascus. From a judgment on that verdict comes this appeal in which appellant asserts several points for reversal. We first consider the contention that the trial court erred in permitting improper voir dire examination of appellant's expert witnesses.

In the presentation of their case, appellees adduced expert testimony to verify their claim for damages. In an attempt to prove what it considered to be just compensation, appellant called to the stand Bryan McArthur, an expert witness as to property valuation. After the usual preliminary questions establishing his qualifications, McArthur was asked by appellant's counsel if he had an opinion as to the fair market value of appellees' property. Before this question could be answered, counsel for appellees secured the court's permission "to ask this witness some questions on voir dire as to his basis of appraisement." Counsel for appellees then proceeded with a lengthy interrogation of the witness obviously calculated to imply to the jury

that his opinion or value testimony (which McArthur had not yet given) was not a product of his independent computation, but one which he had been instructed to arrive at by appellant.

Appellant strenuously objected to this manner of voir dire and eventually moved for a mistrial, but each of its complaints was overruled by the court. Appellant's second expert witness was subjected, also over vigorous objection, to a similar line of interrogation under the pretext of a voir dire inquiry. We think this irregular procedure constituted prejudicial error. Of course, it is proper for counsel to conduct a voir dire investigation into the competency and qualifications of an expert witness for the opposition; but this prerogative neither comprehends nor sanctions a disruption of the orderly, efficient and long-established method of examining witnesses. See VI Wigmore on Evidence § 1882 (3d ed. 1940); 31 Am. Jur. 2d Expert and Opinion Evidence § 32. Not a single question propounded by counsel for appellees to witness McArthur and the other expert witness was addressed to a determination of their qualifications as experts. In substance, these interrogations took on the complexion of cross-examinations attacking the credibility of the witnesses before they had even begun to testify as to property value or damages.

We are cognizant of the fact that Ark. Stat. Ann. § 28-704 (Repl. 1962) permits the trial court wide latitude in directing and controlling the examination of a witness. We are equally aware that in certain situations, particularly where multiple, complex issues are involved, confusion can be minimized and justice better served by permitting cross-examination relating exclusively to one fact issue as soon as the direct examination on that particular subject has been concluded. But this was not the case here. The interrogations propounded by counsel for appellees, as noted above, were directed primarily at discrediting testimony which had not as of then been given. This tactic was clearly impermissible, and the trial court's allowance of such unwarranted interruptions of appellant's order-

ly examination of its witnesses was an abuse of discretion constituting reversible error.

Appellant also contends that the trial court erred in failing to strike the value testimony of appellees' expert witness because "in arriving at his value of the property, he considered residential lands in Conway [population 15,510][1] and Russellville [population 11,-750][1] as indicative of the value of the land in question;" whereas appellees' property was admittedly of a commercial nature and located in Damascus [population 255].[1] We must agree with appellant. As we understand it, appellees assert this was permissible because no commercial sales had occurred in this small rural town during the preceding ten years and, therefore, they should be permitted to resort to utilization of residential sales in minimally developed subdivisions in Conway and Russellville and relate them to sales of residential property located on the highway in the Damascus area in order to establish the commercial value of appellees' property. When it is necessary to go outside an area for evidence about comparable commercial sales, we observe that the better rule is to restrict the evidence to comparable sales of commercial property in an area or town which has more similarity in nature and size. See, *e. g., Arkansas State Highway Comm.* v. *Witkowski,* 236 Ark. 66, 364 S. W. 2d 309 (1963).

We have examined appellant's two remaining points for reversal and find them to be without merit. However, because of the errors noted above, this judgment is reversed and the cause remanded.

FOGLEMAN, J., concurs in part and dissents in part.

JOHN A. FOGLEMAN, Justice, concurring in part; dissenting in part. I agree with the court's holding on the cross-examination of appellant's expert witnesses preceding any testimony except the statement of qualifications and that each such witness had an opinion on the matter of value.

---

[1]1970 Census Report.

I cannot agree, however, on the treatment of the testimony of the value witnesses. In part, that disagreement is based upon a different concept as to evidence of market value. The difference in my concept and that of the majority is best illustrated by the inapplicability of the authority upon which its reliance is placed to the situation at hand. We do not have a case in which there is an effort to establish market value by *evidence of comparable sales,* as was the case in *Arkansas State Highway Commission* v. *Witkowski,* 236 Ark. 66, 364 S. W. 2d 309. No one sought to bring either buyer, seller, or anyone else before the jury to state the terms of sale of lands which were comparable as evidence of the value of appellees' property. Both parties sought to prove market value by qualified experts who had familiarized themselves with existing conditions and were properly permitted to state opinions. Their opinions are remotely, not directly, based upon their knowledge of other sales. Their testimony about these sales cannot be said to be more than an attempt to give a means of measuring their knowledge and competency. The difference in the two approaches is pointed up by a statement in an annotation entitled "Admissibility on issue of value of real property of evidence of sale price of other real property." In the very beginning of the annotation (85 A. L. R. 2d 112), I find this statement:

> To fall within the scope of this annotation, a case must involve an offer of evidence of the sale price of other real property on the issue of the value of the real property in question, and cases which involve an offer of such evidence only for other purposes, such as to test the knowledge and competency of expert witnesses, are not included.

We have heretofore clearly pointed out that direct evidence of comparable sales is one approach to proof of market value and expert opinion another. We called the direct evidence more trustworthy. *Arkansas State Hwy. Commission* v. *Ark. Real Estate Co.,* 243 Ark. 738, 421 S. W. 2d 883. See also *Arkansas State Hwy. Comm.* v. *Sargent,* 241 Ark. 783, 410 S. W. 2d 381.

Nichols' Eminent Domain (Vol. 5, pp. 18-188, 189, § 18.42[1]) also treats the question:

> A distinction must also be drawn relative to the foundation which must be laid for such evidence based upon whether the comparable sales data is used as support for an expert's opinion or as independent substantive evidence of value. Quite obviously, when evidence of the price for which similar property has been sold is offered as substantive proof of the value of the property under consideration, a foundation should be laid showing that the other property is sufficiently near that in question as to character, situation, usability and improvements to make it clear that the tracts are comparable in value. However, where evidence of sales of similar property is offered not as substantive proof of value, but merely in support of, and as background for, the opinion of an expert, the requirement of such foundation is not so strict.

In order to appreciate the real significance of the court's action, it is necessary to know the exact background of the factors involved.

Lloyd Pearce, an appraisal witness, who testified for appellees, found land closely held in Damascus. When asked if he used the "comparable sale" approach to valuation, he replied in the negative. He said he found no property in Damascus of a similar nature that had sold within 10 years. He used the "cost" approach, which he explained as cost of reproduction of structures, less depreciation plus cost of replacing the land. He valued the 12,000 square feet of land at 20¢ per square foot. He assigned the same unit value to the remaining 10,272 square feet in arriving at his "after" value, which is not greatly different from that arrived at by one of appellant's appraisers. He gave very good reasons for his devaluation of improvements. On cross-examination, it was brought out that Pearce found only one sale of property in the Damascus area, which he did not consider comparable because it was for residential purposes. He said that his figure of 20¢

per square foot was a minimum nominal figure and the usual residential value in such cities as Conway, but lower than that in Russellville. He testified that 20¢ per square foot would be comparable to the value of property in a residential subdivision without paved streets, curbs or gutters. He found residential lands outside Damascus on the highway selling for 6 or 7¢ per square foot and arrived at his 20¢ value by applying the ratio of the comparative value of residential land to commercial land in other areas. He definitely stated that he *did not* base his opinion on *any* sales. He found *no* sales of properties with similar characteristics.

Appellant failed to abstract the testimony of its own value witnesses. The record, however, as pointed out to us by appellees, reveals that these witnesses, of necessity, used virtually the same approach as that taken by Pearce. Bryan McArthur, appellant's staff appraiser, who, like Pearce, lives in Little Rock, used the "cost of replacement" method as to the buildings. He established his raw land values at 15¢ per square foot by comparison to highway frontage land selling at from 2 to 5¢ per square foot. He said he considered residential values "to a point." He considered a sale of commercial property in Bee Branch, 5 miles north, but said that it was really not comparable. He arrived at a valuation of $2,650 for the land, on the basis of 15¢ per square foot with an addition of $1,000 for land improvement.

Walker Watson, an appraiser for the highway department, called the Bee Branch sale "in a way comparable," saying that there were no comparable sales, insofar as land and improvements were concerned, and, while the Bee Branch sale could be considered, it wasn't exactly comparable. Consequently, he used virtually the same method as Pearce. After revealing on cross-examination that the Bee Branch property was of a triangular shape rather than rectangular, was in a different school district, in a different county and possibly in a municipality with a different form of government, Watson opined that when such differences exist, the appraiser uses his judgment and experience in

making necessary comparison and adjustments. He found *no* sales of lands with improvements in the Damascus area. Watson did not give any breakdown on his values on land and buildings.

The opinions of the experts are tabulated as follows:

| | Cafe | Body Shop | Drive Pumps, Tanks | Total Imp. | Land | Total |
|---|---|---|---|---|---|---|
| Pearce "Before" | $11,700 | $3,100 | $3,500 | $18,300 | $2,400 | $20,700 |
| Pearce "After" | | | | 5,100 | 2,050 | 7,150 |
| Pearce "Difference" | | | | 13,200 | 350 | 13,550[2] |
| McArthur "Before" | 9,350 | 1,000 | See 1 below | 10,350 | 2,650[3] | 13,000 |
| McArthur "After" | | | | 5,150[4] | 1,717[4] | 6,500[2] |
| McArthur "Difference" | | | | 5,100[4] | ? [3] | 6,500 |
| Watson "Before" | | | | | | 13,500 |
| Watson "After" | | | | | | 7,850 |
| Watson "Difference" | | | | | | 5,650 |

[1]McArthur may have included this valuation in his valuation of the cafe building and service station which is shown in the first column. He may have included it in his land value as land improvement.

[2]A part of the difference in McArthur's damage and Pearce's can be explained by reason of Pearce's considering the property value affected by drainage impairment, but McArthur did not.

[3]The exact calculations ·of McArthur cannot be followed. Because of uncertainty as to the area used, it is not possible to show how he gave a higher before value to the land when he used 15¢ per square foot as the land value. He did state that he included "land improvements" in this figure which may account, in part, for no valuation of drive pumps and tanks.

[4]These figures cannot be reconciled with McArthur's statement that he damaged both buildings $5,150 and that he reduced the value to $5,100. He called $933 for resurfacing concrete land damage. This is apparently his only reduction of land value.

It is obvious that the major difference in values lies in the appraisal of the buildings. Thus, we have the problem of determining the value of raw land in a small town where there are no comparable sales. Here, in ·the words of appellant's senior, or reviewing, appraiser, the appraiser's judgment and experience must, of necessity, come into play. See also, 4 Nichols on

Eminent Domain, 3rd Ed., 84, § 12.31[2]. It is remarkable that when the witness did this, there was a difference of only 5¢ per square foot. This seems clearly indicative to me of the reliability of such an approach, where the major property value is attributable to buildings.

The raw land could only be valued on a "replacement" or "reproduction" basis in the absence of comparable sales. The income approach definitely could not be used. Not only is appellant's reviewing appraiser correct as to the judgment of the appraiser, but, in such cases, a very wide latitude of discretion must be allowed the trial judge.

Appellant's motion did not really reach the question. It first asked that Pearce's value testimony be stricken when he said that he found no sales of property of a similar nature in Damascus during the preceding 10 years. The reason assigned was the ambiguous and erroneous assumption that the only method for appraising property in condemnation actions is market value. See 4 Nichols on Eminent Domain, 3rd Ed., 48, § 12.2. Later appellant moved to strike *all* of Pearce's value testimony because he used property in a different city with a different highest and best use. Obviously, most of Pearce's value testimony was admissible under any view. Since we have held so many times that, in these circumstances, a motion to strike *all* the testimony should not be granted, no citation of authority should be necessary.

We should not say that the trial court abused its discretion in the circumstances prevailing here. Our constitution recognizes that the right of private property is before and higher than constitutional sanction, that no person shall be deprived of his property except by due process of law and that private property shall not be taken or damaged for public use without just compensation therefor. Constitution of Arkansas, Art. 2, §§ 8, 21, 22. I humbly submit that when such a strict adherence to technical rules, the applicability of which is at least questionable, is required by the courts, the

constitutional requirements are disregarded. When there are *no* comparable sales, I can think of nothing to substitute for the judgment of people who are better qualified than judges to know what figure a purchaser and seller, both willing and informed, would likely arrive at as market value of the land on which there were buildings, the value of which had been fixed by other means. They came within 5¢ a square foot of agreeing here. Here reference to a quotation from *Woburn* v. *Adams*, 187 F. 781 (1st Cir. 1911) at 5 Nichols, Eminent Domain 18-92, § 18.4 is apt:

> It is because of the absolute right to take and the bounden duty to surrender under peculiar situations and possible conditions of no present market value that the rules of evidence are somewhat relaxed, and ascertainments of reasonable value must be made on the best evidence of which the case is susceptible * * *. If no sufficiently fair rules of evidence could be devised for ascertaining the reasonable compensation required by the Constitution, the public would either do without the land or the landowner without compensation.

I find no error in this respect. The parties should not be restricted to comparable sales in these circumstances, as the majority seems to say. There weren't any on the date of the previous trial, and there won't be any on a retrial. The most important question is, "What do they do now?"