Stanley HEGG *v.* Markel E. DICKENS
and Wife, Neda Faye DICKENS

CA 82-178                                644 S.W.2d 632

Court of Appeals of Arkansas
Opinion delivered January 26, 1983
[Rehearing denied February 16, 1983.*]

*Philip Farris,* of *Highsmith, Gregg, Hart & Farris,* for appellant.

*Charles E. Clawson, Jr.,* of *Brazil, Roberts & Clawson,* for appellees.

JAMES R. COOPER, Judge. This is the second appeal in this case. In the first case, *Hegg* v. *Dickens,* 270 Ark. 641, 606 S.W.2d 106 (Ark. App. 1980), this Court reversed the trial court's finding that the appellant's counterclaim which was based on fraudulent misrepresentation was without merit. We remanded the case for a trial on the issue of damages, with the measure of damages being the "difference between the real value of the property in its true condition at the time of the transaction and the price for which he purchased it."

*CORBIN and GLAZE, JJ., would grant rehearing.

On retrial, the trial court found that the appellant had been damaged in the sum of $2,000.00. From that decision, comes this appeal.

On remand, various witnesses testified regarding the value of the property in question. The appellant's expert witness, Mr. R. M. Weaver, testified that his opinion as to the value of the property in question was $50,000.00. The trial court found that testimony to be unreliable because of the basis on which it rested. The trial court noted that Mr. Weaver had viewed the property only the evening before, had considered no comparable sales in the vicinity, and had formed his opinion based on his limited observation of the property and the testimony of the appellees' expert witnesses. One witness for the appellees testified that she had attempted to purchase the property herself for a price of $75,000.00. Another witness testified that he believed the property had a value of between $85,000.00 and $95,000.00. The trial court found that the value of the property was $85,000.00, and awarded the appellant judgment accordingly.

The appellant argues that, because of the fraudulent misrepresentation concerning the net income, the appellant must have been damaged more substantially than $2,000.00 since he paid $87,500.00 for the property based on the representation of its net income. That is a compelling argument, but not necessarily true. It would certainly be possible for an individual to purchase property, having been fraudulently induced to do so, and yet the property still have a fair market value equal to or in excess of the price actually paid. Hence, in such a situation, the purchaser would suffer no actual damages, although he had been fraudulently induced into making the purchase.

In chancery cases, we review the record *de novo,* but we will not reverse the chancellor on appeal unless his findings of fact are clearly erroneous or against a preponderance of the evidence, after giving due regard to his opportunity to determine the credibility of the witnesses. Arkansas Rules of Civil Procedure, Rule 52 (a), Ark. Stat. Ann. Vol. 3A (Repl. 1979); *Reeder* v. *Arkansas Louisiana Gas Co.,* 6 Ark. App.

385, 644 S.W.2d 291 (1982); *Baugh* v. *Johnson,* 6 Ark. App. 308, 641 S.W.2d 730 (1982).

There was conflicting evidence regarding the value of the property and the chancellor, after having heard all the witnesses, determined that the credibility of the appellees' witnesses was greater than the credibility of the appellant's expert witness. Although the appellees' witnesses used comparable sales from the city of Conway which concerned larger motel units, they testified that they had taken into consideration the difference in the size of the towns and the size of the motels in arriving at the value opinions.

Although this is a close case, and one which we might have decided differently had we been sitting as the trier of fact, with the opportunity to judge the demeanor of the witnesses, we cannot say that the trial court's finding is clearly erroneous or against the preponderance of the evidence. Therefore, we must affirm.

Affirmed.

CLONINGER, CORBIN and GLAZE, JJ., dissent.

DONALD L. CORBIN, Judge, dissenting. R. M. Weaver, the appellant's expert witness, testified as to his real estate experience. He received his broker's license in 1968 and was one of the first G.R.I.'s (Graduate Real Estate Institute) in the state. He had attended approximately eighty-five short courses all over the nation dealing primarily with appraisals of light commercial real estate. He also had experience in brokering, owning, and selling restaurants and motels and was of the opinion that the fair market value of the Hickory House Motel and Cafe on February 12, 1979, was $50,000.00. As an expert witness, Weaver was permitted to remain in the courtroom and hear the other witnesses testify. His opinion as to the value of the property was based primarily on the fact that Mr. and Mrs. Dickens purchased the property in 1977 for $45,000.00 and spent another $5,000.00 in repairs for a total investment of $50,000.00. The actual purchase price in 1980 at the foreclosure sale was $49,500.00, out of which $2,967.81 was for attorney fees, taxes, and court costs.

The Dickens were required to produce income tax and sales tax records for the years that they owned the motel and restaurant. The sales tax records had apparently burned. Mrs. Dickens testified that they had never run both the motel and restaurant themselves for a year because "they had leased it or something." The Schedule C income tax return listed a net profit of $3,131.50 for the year 1977. After the year 1977, she leased the restaurant for three years. The people to whom she leased it kept it one year and the Dickens took it back in November of 1978. She testified that she leased it most of the year 1978 and the lease price was $400.00 per month. Mrs. Dickens stated that she didn't have her books for the year 1978 and couldn't remember how much she had netted off the operation of the motel. She did testify that she lost money in the operation of the business. Mrs. Dickens also said that the bank would not loan them more than $40,000.00 on the motel and cafe in 1977. Later that amount was increased to $45,000.00.

The appellees introduced testimony from two expert witnesses. Dennis Miller had been a licensed real estate broker for four years in Conway. He was the listing broker in the sale of the property to Hegg from the Dickens and had personally made $2,900.00 off the sale. His opinion as to the value of the property in February 1979 was between $85,000.00 and $90,000.00. This figure represented the value of the land and buildings without any consideration of the business itself. He went on to testify that the highest and best use of the property would depend on its management but that its highest and best use in 1979 was as a motel and restaurant. Miller based his opinion on what he labeled as comparable sales and described as follows:

> A grocery store on Highway 65 north of Greenbrier which sold for $60,000.00 in 1973; a house and five acres on Highway 65 north in Greenbrier for $45,000.00 in 1977; a dari-diner in Greenbrier for $43,000.00 recently; the Stacy Motel (19 units) in Conway, Arkansas for $140,000.00 in 1980; the Continental Motel (21 units) in Conway sold for $175,000.00 in 1978; and four boat docks in Conway.

His description of each of the foregoing sales on cross-examination clearly shows they were not comparables. Miller stated that the house and five acres which sold in 1977 on Highway 65 north was residential property. He also admitted that boat docks, motels and restaurants were not the same thing. He further testified that a grocery store was different from a motel and that the sales price of $60,000.00 for the store included its inventory. When questioned about the motel which sold in Conway, Arkansas, Miller stated that Conway had a population of 27,000 people in the fall, winter and spring and that the city intersected with an interstate highway as well as with Highways 60, 64, and 65.

Appellees also offered the testimony of Janice Mack, who had been a real estate broker in Greenbrier, Arkansas for four years. Mack also offered comparable sales of property to buttress her opinion of the value of the Hickory House Motel and Cafe, placing a value on it of between $80,000.00 and $90,000.00. Her comparables consisted of property in and around the Greenbrier area described as follows:

A drugstore building which sold in 1980 for $30,000.00; a dari-diner which Dennis Miller had previously mentioned for $43,000.00 in 1980; a house which sold in 1980 and could have been used for commercial purposes for $38,000.00; her office which was purchased in 1979 for $25,000.00; the Greenbrier Recreation Club which consisted of a swimming pool and recreation facility on Highway 65 and five acres which were purchased for $55,000.00 in 1978; a warehouse at the corner of Highways 65 and 225 purchased in 1977 for $30,000.00; and two old houses sitting on two acres for $37,000.00 in 1979.

Like those values offered by Miller, the property sales given by Mack simply cannot be called comparables.

Nonetheless, the chancellor considered both Miller's and Mack's opinion testimony but disregarded Weaver's. In doing so, the chancellor stated:

That the testimony of the expert submitted by the defendant, Stanley Hegg, was based purely on conjecture, speculation and testimony given by other witnesses during the trial and that there was no basis in fact or otherwise for this opinion to which the Court gave little credence.

If any of the values offered could be labeled conjectural or speculative, it had to be that offered by appellees' experts. Weaver's opinion was based primarily on the Dickens' purchase of the property in 1977 for $45,000.00. In disregarding Weaver's opinion, the trial court committed clear error. The Arkansas Supreme Court has ruled in several cases that evidence as to comparable sales should not be excluded on the basis that they were made at a time either preceding or subsequent to the date on which the valuation was to be set. *Housing Authority of City of Little Rock* v. *Sparks*, 234 Ark. 868, 355 S.W.2d 166 (1962).

It is plain that the court had no comparable sales whatsoever upon which to base its opinion. If comparables are to be of any evidence at all, the ones used in this case indicate that the Dickens' property was worth even less than that to which Weaver testified. In *Arkansas State Highway Commission* v. *Dipert*, 249 Ark. 1145, 463 S.W.2d 388 (1981), the same issue was addressed. There, appellee's expert witness testified concerning the value of the property in Damascus, Arkansas but he based his opinion on residential property in Conway, which at that time had a population of 15,510, and Russellville, which at that time had a population of 11,750. The Court noted that the appellee's property was of a personal nature and located in Damascus, population 255. The Court said:

As we understand it, appellee asserts that this was permissible because no commercial sales had occurred in this small rural town during the preceding 10 years and, therefore, they should be permitted to resort to utilization of residential sales in minimally developed subdivisions in Conway and Russellville and relate them to sales of residential property located on the highway in the Damascus area in order to establish

commercial value of appellee's property. When it is necessary to go outside an area for evidence about comparable commercial sales, we observed that the better rule is to restrict the evidence to comparable sales of commercial property in an area or town which has more similarity in nature and size.

Plainly, the comparables offered by the appellees' witness, Dennis Miller, are not comparable within the meaning of the law and should have been given no consideration by the chancellor. To compare those property values in the City of Conway with the small town of Greenbrier, Arkansas, is totally unrealistic.

Even if the property in dispute was worth as much as the highest comparable sale given by Miller or Mack (the sale of the grocery store including inventory), the Hickory House Motel and Cafe would only be worth the sum of $60,000.00. In that event the appellant would be entitled to recover his down payment of $25,000.00.

I would reverse and allow the appellant to recover $25,000.00.

CLONINGER and GLAZE, JJ., join in this dissent.