Ricky TERRELL *v.* STATE of Arkansas

CA CR 88-36                                    759 S.W.2d 46

Court of Appeals of Arkansas
Division II
Opinion delivered October 26, 1988

*Villines & Lacy*, by: *M. Watson Villines II*, for appellant.

*Steve Clark*, Att'y Gen., by: *Clint Miller*, Asst. Att'y Gen., for appellee.

JAMES R. COOPER, Judge. In this criminal case, the appellant was convicted of rape and sentenced to seventeen years in the Arkansas Department of Correction. On appeal the appellant argues six points for reversal. We find that the trial court erred in limiting the appellant's testimony concerning the past relationship between the appellant and the victim and we reverse and remand.

The record reveals that the alleged rape took place on December 4, 1986. The victim testified that she and the appellant were neighbors and friends. According to the victim, she was asleep in bed when she heard the doorbell at approximately 1:30 a.m. A few minutes later she heard knocking on her bedroom window. The victim stated that when she looked out she saw the appellant and he asked her to let him come inside and wait for his ride. The appellant explained to her that he and his girlfriend had gotten into a fight. The victim let the appellant in and sat with him in the living room. After about fifteen minutes, the victim told the appellant that he would have to leave, but at his request, she

allowed him to wait a few more minutes. She then got up to look out of the window and when she turned around, the appellant jumped on her, pulled at her clothes, and began to have digital intercourse with her. After struggling with him, she was able to grab a decorative rock from a bookshelf and hit the appellant in the head. When the appellant left, his head was bleeding.

The appellant, testifying in his own defense, stated that he did not have a fight with his girlfriend, but was unable to sleep after attending an alcoholic's anonymous meeting and left his house, across the street from the victim's house, to buy cigarettes. According to his testimony, he saw the victim and she called to him and invited him into her house. They then began to argue because the appellant refused to spend the night at the victim's house. The argument led to a physical fight and the appellant left when the victim struck him in the head with a rock.

■ The appellant first argues that the trial court erred in limiting the evidence of a prior romantic relationship between himself and the victim. In light of the fact that the appellant's defense was that his and the victim's injuries were the result of a fight about their relationship, we agree.

The Arkansas Rape Shield Statute prohibits evidence of the victim's prior sexual conduct unless, on written motion and hearing, relevancy of the proffered evidence is established and its probative value outweighs its prejudicial effect. *State* v. *Small*, 276 Ark. 26, 631 S.W.2d 616 (1982); Ark. Stat. Ann. § 41-1810.1 et seq. (Repl. 1977), now codified at Ark. Code Ann. § 16-42-101 (1987). Here, the fact that the victim and the appellant may have had a relationship beyond being just friends and neighbors is highly relevant. Without any evidence of the past relationship, the jury had no basis upon which it could find it reasonable for the appellant to be at the victim's home in the early morning hours and no basis upon which it could find that the incident was the result of an argument. The appellant should be able to testify to the actions of the victim on the night of the alleged rape and the other events which occurred on that night. *Kemp* v. *State*, 270 Ark. 835, 606 S.W.2d 573 (1980); *Brown* v. *State*, 264 Ark. 944, 581 S.W.2d 549 (1979).

However, it must be kept in mind that the purpose of the Rape Shield Statute is to limit evidence of the victim's past sexual

conduct and to protect the victim from unnecessary humiliation. *Duncan* v. *State*, 263 Ark. 242, 565 S.W.2d 1 (1978). Therefore, while evidence of the victim's and appellant's past relationship should be admitted into evidence in the appellant's new trial, evidence of explicit sexual conduct that has no direct bearing on the events which occurred on the night of the alleged rape should be excluded.

The appellant's second point concerns a tape made when the victim made her statement to the police, which was later destroyed. It is the appellant's contention that the trial court erred in failing to grant his motion to dismiss based on the fact that the tape was destroyed, because the tape was essential to impeach the victim's testimony.

Apparently, the victim's statement was transcribed and copies provided to the appellant. The statement allegedly contained "strikeovers" and changes initialled by the victim. The appellant argues that the tape recorded statement would resolve the issues of credibility. The appellant does not allege bad faith or connivance on the part of the State. *See State* v. *Hardin*, 271 Ark. 606, 609 S.W.2d 64 (1980). Furthermore, the appellant makes no showing that the missing tape was exculpatory, *see California* v. *Trombetto*, 467 U.S. 479 (1985), or that there is a reasonable probability that, had the tape been produced, the result would have been different. *United States* v. *Bagley*, 473 U.S. 667 (1985). Under these circumstances, we cannot say that the loss of the tape was of such prejudicial magnitude as to warrant dismissal. *Wood* v. *State*, 20 Ark. App. 61, 724 S.W.2d 183 (1987).

The appellant's fourth point concerns the trial court's refusal to allow the appellant to question the victim about the strikeovers in the written transcription of the tape recording. At trial the appellant wished to impeach the victim by cross-examining her about the strikeovers. Although the appellant was permitted to cross-examine the victim about any inconsistencies between her in-court testimony and her edited statement, he was not permitted to question the victim about the strikeovers and changes. In an *in camera* conference the appellant argued that the written statement had been changed from "I said, come to the door," to "He said, come to the door." The court stated that it could not

conclude that the word stricken out had been "I," and that he did not see a prior inconsistent statement.

The trial court found that the edited statement was the only statement that the victim had made and that there was no prior inconsistent statement. The statement itself is not part of the record and the only strikeover argued in the record is the alleged I/he change discussed above. Because the typed statement is not in the record, we cannot discern if there was a reversible error. However, this issue is likely to recur in the appellant's new trial, and we will deal with it.

In *Williamson* v. *State*, 263 Ark. 401, 565 S.W.2d 415 (1978), the appellant's conviction for robbery was reversed because the State refused to disclose either the recorded or taped testimony of the victim. The Court stated:

> We are further persuaded that appellant was not only entitled to the written transcription prepared by the state from the recorded statements, but appellant was entitled to discover the tapes not only because the tapes represented the best evidence, but without the tapes, appellant had no way of comparing the transcription in order to determine if the transcription was a correct reproduction of the recordings. Indeed, the statement as well as the tapes would have been most helpful to appellant in his cross-examination of state's witnesses.

263 Ark. at 405. The next year the Supreme Court decided the case of *Westbrook* v. *State*, 265 Ark. 736, 580 S.W.2d 702 (1979). Westbrook was convicted of murdering a police officer and received the death penalty. At trial, Westbrook raised the defense of insanity. Westbrook had been committed to the state hospital in 1972 and 1974, and, as part of his defense, requested the records from these commitments. The Court held that, in light of Westbrook's defense, it was necessary for him to have the records to prepare for his defense, and compared the records to the tapes in *Williamson, supra.*

Recently, the Supreme Court decided the case of *Hamm* v. *State*, 296 Ark. 385, 757 S.W.2d 932 (1988). Hamm, convicted of aggravated robbery, made a confession which was recorded on microcassette. The confession was transcribed and then the tape

was erased. The transcript of the confession was read into evidence over Hamm's objection. Prior to trial, Hamm had requested the tape recorded statement in order to compare it with the transcript. Citing *Williamson, supra*, the Court reversed Hamm's conviction.

In the case at bar, the victim's statement was not read into the record as in *Hamm*, nor, as far as we can tell, did any alleged discrepancy between the tape and the transcript reveal a crucial difference in identity of the appellant, as in *Williamson*. However, in light of the Supreme Court's rulings on this issue, we believe that the trial court unduly restricted the appellant's cross-examination of the victim with regard to the typed statement. *See Miller v. State*, 269 Ark. 409, 601 S.W.2d 845 (1980). On retrial, the appellant should be able to cross-examine the victim about the alleged strikeovers and the alleged inconsistencies.

For his third point, the appellant argues that the trial court erred in not excusing a juror for cause. The appellant contends that he was forced to use a peremptory strike on Terry Milam because he was then represented by the prosecutor, Mr. Foster, in a pending civil case. Although the appellant properly requested that Mr. Milam be excused for cause, he has not shown that he was forced to accept a juror against his wishes, which is required to preserve this issue for appeal. *Watson v. State*, 289 Ark. 138, 709 S.W.2d 817 (1986); *Conley v. State*, 270 Ark. 886, 607 S.W.2d 328 (1980).

For his fifth point the appellant alleges that the trial court committed error by allowing the State to bolster the testimony of the victim with prior consistent statements. Immediately after the victim testified, Officer David Naylor of the Conway Police Department was called to testify. Over the appellant's objection Officer Naylor testified extensively about what the victim told him when he arrived at her home to investigate the rape. The statements the victim made to Officer Naylor were consistent with her testimony at trial. It is the appellant's contention that since the victim's credibility had not been impeached, it was error to allow the officer to testify about what she told him.

Arkansas Rules of Evidence Rule 801(d)(1)(ii) states:

> (d) Statements Which are Not Hearsay. A statement is not hearsay if: (1) Prior Statement by Witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . (ii) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive . . . .

During cross-examination of the victim, the defense attorney questioned her about inconsistencies between her statement to the police and her testimony at trial. The attorney also attempted to elicit testimony from her that she had recently reviewed her statement and that her testimony resulted from reviewing her statement rather than from her recollection. Ordinarily, evidence of prior consistent statements is not admissible to bolster credibility because it is hearsay. Rule 801(d)(1)(ii) provides an exception to that rule where there has been a charge of recent fabrication or improper influence, as there was in this case, and we hold that the trial court ruled correctly. *Todd* v. *State*, 283 Ark. 492, 678 S.W.2d 345 (1984).

■■ The appellant's last argument concerns expert testimony given by Officer Jerry Snowden, who also investigated the rape. He testified about some photographs of blood splatters and smears on the victim's wall. After he testified about the pictures, the State began questioning him about his training and experience in blood splatters. The appellant objected to the foundation that had been laid for expert testimony and requested an opportunity to *voir dire* Officer Snowden. The trial court overruled the appellant's objection. The appellant then objected because he had not been notified by the State that Officer Snowden would be testifying as an expert, which the trial court also overruled. Officer Snowden then testified that the splatters were about sixteen inches off of the floor, that when a person is struck, blood travels straight out, hits what is closest and then drops. Therefore, he stated, the appellant's head had to have been about sixteen inches from the floor when he was struck. The appellant contends that the trial court erred in refusing his request to *voir dire* Officer Snowden and in allowing Officer Snowden to testify when the appellant had not been notified. We do not address these issues because we do not think that the alleged errors are likely to recur in the appellant's new trial. The

appellant will be entitled to any reports or statements made by any experts and to a list of witnesses the State intends to call pursuant to A.R.Cr.P. Rule 17(a). If the State fails to comply with discovery, the appellant can request sanctions in accordance with A.R.Cr.P. Rule 19.7. Although not reversible error in this case, we do think it is a better practice for the trial court to allow a defendant to *voir dire* a witness giving opinion testimony in order to test the witness's qualifications. *See Scott* v. *Jansson,* 257 Ark. 410, 516 S.W.2d 589 (1974); *Arkansas State Highway Commission* v. *Dipert,* 249 Ark. 1145, 463 S.W.2d 388 (1971).

Because we have found that the trial court was too severe in its limitation of the appellant's testimony about the prior relationship between him and the victim, and its limitation on cross-examination of the victim about her statement this case is reversed and remanded for a new trial.

Reversed and remanded.

MAYFIELD and COULSON, JJ., agree.