Jim TRICOU and Utility Management Controls, Inc. *v.*
ACI MANAGEMENT, INC.

CA 90-547                                    823 S.W.2d 924

Court of Appeals of Arkansas
Division I
Opinion delivered January 29, 1992

52

*Bradley, Coleman & Davidson*, by: *Scott Davidson*, for appellant.

*Ponder & Jarboe*, by: *Dick Jarboe*, for appellee.

MELVIN MAYFIELD, Judge. On December 14, 1988, the appellee filed suit against the appellants seeking to recover damages allegedly sustained as a result of intentional and fraudulent misrepresentations which induced appellee to contract with appellants for the purchase of voltage surge suppressors. The complaint stated that "the misrepresentations involved the misrepresentation of the fact that Underwriters Laboratories, Inc. had approved the devices which were sold." Recovery for both compensatory and punitive damages were sought.

The appellants filed a timely answer to the complaint, and appellant Utility Management Controls, Inc. subsequently filed a counterclaim in which it asked for damages against the appellee for failure to fulfill appellee's contract to purchase the suppressors and its agreement not to compete with appellant in selling or manufacturing the suppressors described in the contract of sale between the parties.

On June 23, 1989, the appellee took the deposition of appellant Jim Tricou, who owned and operated appellant Utility Management Controls, Inc. During the deposition, Tricou re-

fused to answer several questions but promised to furnish certain information to appellee. On July 13, 1989, the appellee filed a motion to compel the appellants to furnish the promised information. The trial court granted the motion by an order filed of record on October 10, 1989.

The license to practice of the attorney representing the appellants was subsequently revoked and the trial court entered an order substituting new counsel on February 24, 1990. By this time the new counsel was aware that the court had granted the motion to compel and had advised the appellants of the court's order in this regard. On April 3, 1990, the appellee filed a motion alleging that the information which the court's order of October 10, 1989, had directed appellants to furnish had not been furnished. The motion further alleged that the case was set for trial on April 25, 1990, and that the information to be furnished "might be useless if furnished at this late date." The motion concluded with the request that the court "impose sanctions on the defendant by awarding plaintiff the relief sought in the complaint in the form of summary judgment.

This motion was heard on May 30, 1990. On that same day the appellants filed a "Response to Discovery Requests" which supplied information in the form of statements made and documents and correspondence attached. At the hearing on the motion for sanctions, counsel for appellee pointed out that the information ordered furnished by the court's order of October 10, 1989, was not furnished until May 30, 1990, over seven months later, and that he thought default judgment against appellants would be a proper sanction under Arkansas Rules of Civil Procedure, Rule 37.

Counsel for appellants explained to the court that another attorney had represented the appellants at the time Mr. Tricou's deposition was taken and that there was some confusion in getting the requested information to the present attorney. Counsel said he "finally got to the point" where he called his client and told him to "get the stuff to me" if "you want me to stay on this case." He said he "did not receive the stuff until yesterday." Counsel also pointed out that default judgment was a harsh remedy.

After some discussion, the court stated:

> Allright. The Court is going to, I am going to strike the counterclaim and I am going to grant a default judgment. You're going to have to put on proof of damages. I'm not going to mess with this any longer.

The court then set August 27, 1990, as the date for a hearing on damages. A written order to that effect was entered in July of 1990. At the August hearing, the court granted appellee a judgment against the appellants for compensatory damages in the sum of $47,689.50 and punitive damages in the sum of $95,995.65.

Appellants first argue that the trial court abused its discretion in awarding a default judgment as a sanction for failing to comply with its order to furnish discovery information within a timely period. One point made in their argument is that the Arkansas cases, in which the sanctions of dismissal or default judgment have been employed, are cases where the court order has specifically warned that failure to comply would subject the party to the sanctions provided for such failure. Appellants cite the following cases in support of that argument: *Cagel v. Fennel*, 297 Ark. 353, 761 S.W.2d 926 (1988); *Mann v. Ray Lee Supply*, 259 Ark. 565, 535 S.W.2d 65 (1976); *Graham v. Sledge*, 28 Ark. App. 22, 771 S.W.2d 296 (1989). It is not contended that such a warning must be given; only that the cases have involved situations where the warning was given; and that it would be proper in this case to reverse the severe sanction imposed since no warning was given, there was a change of counsel, and there was ultimate compliance with the court's order.

*Cagel v. Fennel, supra*, points out that our rules do not require a finding of willful or deliberate disregard of the court's order before sanctions may be applied. However, the court's order granting default judgement in the instant case made the specific finding that the appellants "have willfully failed to comply" with the order which directed them to furnish the information promised in Tricou's deposition. Because the order to furnish that information, which was entered on October 10, 1989, provided that the appellants had thirty days in which to comply and because they failed to do so until more than seven months later, and then only after present counsel warned appellants to furnish the information if they wanted him to stay on the case, we cannot

say the sanctions imposed by the court, although certainly harsh, were an abuse of the court's discretion.

Appellants also argue that the award of punitive damages was not proper, was not supported by the evidence, and was excessive.

After hearing the evidence as to damages on August 27, 1990, the trial court simply announced the amount of compensatory and punitive damages which it granted without making any finding of malice or willful, wanton, or reckless conduct, nor did the judgment entered by the court make any such findings. This issue has been fully discussed in the recent opinion of the Arkansas Supreme Court in the case of *Stein v. Lukas*, 308 Ark. 74, 823 S.W.2d 832 (1992). In that opinion, the court stated:

> We have held that punitive or exemplary damages are proper where there is an intentional violation of another's right to his property. *See Walt Bennett Ford, Inc. v. Keck*, 298 Ark. 424, 768 S.W.2d 28 (1989). We have further held that punitive damages are available in cases of misrepresentation or deceit. *See Thomas Auto Co. v. Craft*, 297 Ark. 492, 763 S.W.2d 651 (1989).

> In addition, we have said that an award of punitive damages is justified only where the evidence indicates that the defendant acted wantonly in causing the injury or with such a conscious indifference to the consequences that malice may be inferred. *See Missouri Pacific Railroad v. Mackey*, 297 Ark. 137, 760 S.W.2d 59 (1988); *National By-Products, Inc. v. Searcy House Moving Company, Inc.*, 292 Ark. 491, 731 S.W.2d 194 (1987). In both cases we quoted the following language from *St. Louis, I.M. & S. Ry. Co. v. Dysart*, 89 Ark. 261, 116 S.W. 224 (1909) with approval:

>> In other words, in order to superadd this element of damages by way of punishment, it must appear that the negligent party knew, or had reason to believe, that his act of negligence was about to inflict injury, and that he continued in his course with a conscious indifference to the consequences, from which malice

may be inferred.

*Mackey,* 297 Ark. at 145; 760 S.W.2d at 63; *National By-Products, Inc.,* 292 Ark. at 494; 731 S.W.2d at 196.

We have also defined circumstances from which malice can be inferred: "In other words, in order to warrant a submission of the question of punitive damages, there must be an element of willfulness or such reckless conduct on the part of the defendant as is equivalent thereto." *Dalrymple* v. *Fields,* 276 Ark. 185, 188, 633 S.W.2d 362, 364 (1982); *quoting Hodges* v. *Smith,* 175 Ark. 101, 293 S.W.2d 1023 (1927).

In 1987, we cited Arkansas Model Jury Instruction 2217 as an embodiment of the law on punitive damages. *See Dongary Holstein Leasing, Inc.* v. *Covington,* 293 Ark. 112, 732 S.W.2d 465 (1987). We quoted AMI 2217 in part as requiring a finding that the defendant "knew or ought to have known, in the light of the surrounding circumstances, that his conduct would naturally or probably result in injury and that he continued such conduct in the reckless disregard of the consequences from which malice can be inferred." *Id.* Hence, malice can be inferred either from a conscious indifference to the consequences of one's actions or from a reckless disregard to those same consequences.

Our analysis begins by determining the degree of evidence required for the jury to consider a punitive damage award. We have said that if there is *evidence* tending to show deliberate misrepresentation or deceit, that meets that plaintiff's burden. *See Ray Dodge, Inc.* v. *Moore,* 251 Ark. 1036, 479 S.W.2d 518 (1972). We have further said that the degree of proof required is *substantial evidence* of actual or inferred malice. *See City Nat'l Bank* v. *Goodwin,* 301 Ark. 182, 783 S.W.2d 335 (1990); *Satterfield* v. *Rebsamen Ford, Inc.,* 253 Ark. 181, 485 S.W.2d 192 (1972). We believe that the better rule is to look for any substantial evidence to support a punitive damages instruction, and we hold that to be the standard.

*Stein* v. *Lukas,* 308 Ark. at 77-79, 823 S.W.2d 832.

Using the analysis employed by the court in the above case,

we consider the evidence in the instant case to see if the court's award of punitive damages is supported by substantial evidence. The only evidence on this issue was introduced at the hearing before the court on August 27, 1990. The deposition of Jim Tricou is in the record and was referred to in the hearing on appellee's request for sanctions which was held on May 30, 1990. At that hearing, a default judgment for appellee was granted, under the authority of Ark. R. Civ. P. 37(b)(2)(C), as a sanction for failing to comply with the trial court's order filed October 10, 1989, and the court set a hearing for proof of damages to be presented on August 27, 1990. However, the deposition of Jim Tricou was not introduced into evidence at the hearing on damages, and he did not testify at that hearing. The only evidence on the punitive damages issue came from the testimony of Charles C. Snapp who testified that on behalf of appellee ACI Management, Inc., he entered into the agreement with the appellants to purchase the voltage surge suppressors. His testimony on the punitive damage issue was as follows:

> Q      Mr. Snapp, you've made a request for, let me make sure about this, but my recollection is that a request was made for punitive damages in this case under the theory that this was an intentional misrepresentation to you.
>
> A      Yes, sir.
>
> Q      What can you tell the Court about whether or not the misrepresentation was intentional and purposeful in order to get you to buy these units, Mr. Snapp?
>
> A      Well, when we had our original meeting, he had a similar brand of suppressor that he showed us, and when we were discussing the merits and so on and so forth and the price, he said, "This one that we're putting into production will exceed the expectations and [sic] what this one will do completely," and that unit was UL listed, clearly marked. Then, when he, when we get the units and we've been putting them out for several months, the way we actually found out about it was from a potential customer who called the Underwriters Laboratory and they said, "No, that unit's not UL listed, that, that number even belongs to another company not even associated with them," and so on and so forth. And after we quit doing

business with them and after we filed the case against them, they still continued to sell units to other people displaying the same UL number.

Q  But the units were not in fact UL listed —

A  No.

Q  — and you have documents from united —

A  Yes, sir.

Q  — from Underwriters Laboratory to prove that.

A  Yes, sir.

BY MR. JARBOE: I think that's all, Judge.

Looking now at the law on recovery of punitive damages, we note that the court in *Stein* v. *Lukas*, *supra*, concluded its discussion on the "degree of evidence required for the jury to consider a punitive damage award" by citing three cases. The first case, *Ray Dodge, Inc.* v. *Moore*, 251 Ark. 1036, 479 S.W.2d 518 (1972), is cited in support of the statement that it will meet the plaintiff's burden "if there is evidence tending to show deliberate misrepresentation or deceit." The other two cases, *City Nat'l Bank* v. *Goodwin*, 301 Ark. 182, 783 S.W.2d 335 (1990) and *Satterfield* v. *Rebsamen Ford, Inc.*, 253 Ark. 181, 485 S.W.2d 192 (1972), are cited in support of the statement that there must be "substantial evidence of actual or inferred malice." The opinion in *Stein* v. *Lukas* had earlier stated that "malice can be inferred either from a conscious indifference to the consequences of one's actions or from a reckless disregard of those same consequences." *Stein* v. *Lukas*, at 77.

When we apply the evidence in the instant case, we do not think it will support an award of punitive damages. There was no evidence introduced at the hearing on August 27, 1990, that Mr. Tricou represented that the voltage surge suppressors he sold the appellee were UL listed. The most the evidence would support on this point is that Mr. Tricou showed Mr. Snapp a "similar brand of suppressor," which was UL listed, and said the one Tricou's company was putting into production "will exceed" the performance of the "similar brand" that was being shown. This evidence will not support a finding that Tricou represented the

suppressor he was selling the appellee was UL listed. Mr. Snapp did indicate that his company was supplied units with a UL number on them, and a potential customer found out that the number did not belong to the appellants. There was, however, no evidence of how or why that number appeared on those units. We do not think this evidence is sufficient to show that appellants placed a UL number on its units with the intent to deceive or mislead the appellee, or in reckless disregard of the consequences. Furthermore, the evidence does not show that the suppressors sold to the appellee did not exceed the performance of the "similar brand" that Tricou showed to Snapp. At this point, however, the problem becomes clear.

The appellee in proving its damages did not attempt to prove that the appellants were liable for either compensatory or punitive damages. It was not necessary that it do so as far as *compensatory* damages were concerned. The sanction of the trial court established liability for those damages. The order imposing that sanction stated "the court does hereby award plaintiff a money judgment," and sets a date on which "proof of damages shall be presented." In its brief in this appeal the appellee does not even argue that it presented proof of liability for *punitive* damages. It argues only that the trial court, by granting the sanction of default judgment, granted liability for punitive damages as well as liability for compensatory damages. We do not know whether or not the court's order imposing sanctions against the appellants, intended to impose liability for punitive damages, but if such liability was imposed by that order, we think it was error.

So, while we do not find the court erred in the imposition of the sanction of liability for compensatory damages, we hold that it would be an abuse of the trial court's discretion to extend its sanction to liability for punitive damages. In *Thomas Auto Co. v. Craft*, 297 Ark. 492, 763 S.W.2d 651 (1989), the court said that the purpose of punitive damages is "deterrence and punishment of wrongdoing." 297 Ark. at 498. It is clear that the sanction imposed in this case for failing to comply with the order to furnish information was for punishment. Awarding liability for compensatory damages seems punishment enough for failing to furnish the information. To also award liability for punitive damages would smack of double punishment. Thus we find that if the trial

court intended to award liability for punitive damages for the appellants' failure to furnish the information as ordered, there was an abuse of the court's discretion in that respect. And, if that was not the trial court's intent, we find that the evidence presented at the hearing to establish damages is not sufficient to constitute substantial evidence to support liability for the punitive damages awarded by the court.

The ordinary rule in reversing law cases is to remand for new trial rather than dismiss, unless it is clear that there can be no recovery. *Little Rock Newspaper, Inc.* v. *Dodrill*, 281 Ark. 25, 32, 660 S.W.2d 933 (1983); *Colonial Life & Accident Ins. Co.* v. *Whitley*, 10 Ark. App. 304, 311, 664 S.W.2d 488 (1984). Because we know from the deposition of appellant Jim Tricou (which is in the record for the ruling on appellee's motion to compel appellants to furnish information but not put in evidence at the hearing on damages) that there is additional evidence available on the punitive damage issue, we cannot say that the record affirmatively shows there can be no recovery for punitive damage. However, we cannot affirm the compensatory damage award and remand the case for trial as to the punitive damage issue only. *See Hinkle* v. *Perry*, 296 Ark. 114, 117, 752 S.W.2d 267 (1988); *McVay* v. *Cowger*, 276 Ark. 385, 635 S.W.2d 249 (1982); *Clark* v. *Arkansas Democrat Co.*, 242 Ark. 497, 413 S.W.2d 629 (1967) (supplemental opinion). Therefore, we reverse and remand.

Reversed and remanded.

COOPER and DANIELSON, JJ., agree.