Marcus THREADGILL v. STATE of Arkansas

CA CR 00-758                                        47 S.W.3d 304

Court of Appeals of Arkansas
Divisions I, II, and III
Opinion delivered June 27, 2001

*Arkansas Public Defender Commission*, by: *Latrece Gray* and *Lott Rolfe*, for appellant.

*Mark Pryor*, Att'y Gen., by: *John Ray White*, Deputy Att'y Gen., for appellee.

JOHN E. JENNINGS, Judge. Marcus Threadgill was charged with capital murder in the shooting death of Larry Roberson. After a jury trial, he was convicted of first-degree murder and sentenced to thirty-three years in prison. For reversal, Threadgill makes two arguments: (1) that the trial court erred in permitting the State to impeach the testimony of the witness, Tequila Hall, and

(2) that the trial court erred in allowing the eyewitness testimony of Christopher Parker. We find no error and affirm.

On April 30, 1997, Larry Roberson was shot in the head as he sat in the driver's side of his own car. His body was dumped on the side of the road. There was evidence at trial that the shot was fired from the back seat of the car.

Some eighteen months later appellant, Marcus Threadgill, and his cousin, Christopher Parker, were arrested in connection with the murder. Parker, who was ultimately charged with hindering apprehension, gave a statement to the police. He said that he was riding on the passenger side of Roberson's vehicle when Threadgill shot Roberson from the back seat. At trial, appellant stipulated that he was in the car at the time of the shooting.

During the investigation, the police interviewed Tequila Hall. Hall told them that appellant and Parker came to her apartment, which was located near where Roberson's car was found, on the night of the shooting and asked her to take them home. On the way they stopped at Parker's sister's apartment, where the two men changed clothes. Hall also told the police that appellant said to her, with other people present, that he had "shot the dude." Threadgill does not argue on appeal that the evidence is insufficient to sustain his conviction.

Appellant's first argument is that the trial court erred in permitting the State to introduce into evidence the prior statement given by Tequila Hall. The argument is based on a line of cases which have held that once a witness admits making a prior inconsistent statement and admits that it was false, then the statement itself is not admissible. *Ford v. State*, 296 Ark. 8, 753 S.W.2d 258 (1988); *Hinzman v. State*, 53 Ark. App. 256, 922 S.W.2d 725 (1996); *Gross v. State*, 8 Ark. App. 241, 650 S.W.2d 603 (1983). The theory is that "an admitted liar need not be proved one." Appellant's argument must fail for two reasons.

The most critical portion of Hall's prior statement to the police was her statement that appellant had told her and others that he had "shot that dude." On cross-examination Hall testified that she had not heard appellant talking about the night of the shooting, hadn't overheard any conversation, and didn't remember talking to a police officer about it. She said, "I don't remember saying it, or if I did say it, it is not true."

In *Kennedy v. State*, 344 Ark. 433, 42 S.W.3d 407 (2001), the supreme court, faced with quite similar circumstances, held that it was not error to permit the State to impeach the witness by the introduction of the prior inconsistent statement. In *Kennedy* the witness admitted she had made a prior statement to the police, but professed a lack of memory about the particulars. The court said that "where ... the witness is asked about the prior statement and either denies making it or fails to remember making it, extrinsic evidence of the prior statement is admissible". *Kennedy*, 344 Ark. at 445 (citing 1 John W. Strong, *McCormick on Evidence* § 34 at 126 (5th ed. 1999)).

■ After examining the witness's statement as a whole, the court determined that "the only thing that she fully admitted was that she had given a statement or interview to the police." The court said that her answers were "hardly full and unequivocal admissions of having made the prior inconsistent statements." *Kennedy*, 344 Ark. at 448. *See also, Roseby v. State*, 329 Ark. 554, 953 S.W.2d 32 (1997); *Chism v. State*, 273 Ark. 1, 616 S.W.2d 728 (1981); *Billings v. State*, 52 Ark. 303, 12 S.W. 574 (1889). The court's language fairly describes the answers given by the witness in the case at bar.

Furthermore, the issue now raised on appeal was not preserved at trial. When Ms. Hall's prior inconsistent statement was offered the following colloquy took place:

BY DEFENSE COUNSEL: We have an objection under Rule 613(b), where it states it is not permissible to impeach a witness by a statement.

BY THE COURT: About past recollection recorded or present recollection refreshed or impeachment.

BY PROSECUTING ATTORNEY: For impeachment.

BY DEFENSE COUNSEL: He can take a look at the Rule. I'm only just looking at the black and white rules in the rule book.

BY PROSECUTING ATTORNEY: It's a contradictory statement, also, by the witness.

BY PROSECUTING ATTORNEY: It's a prior inconsistent statement given by the witness. It is clearly admissible.

BY THE COURT: Any response?

BY DEFENSE COUNSEL: Just note our objection, Judge.

BY THE COURT: On what basis?

BY DEFENSE COUNSEL: The basis of the objection is Rule 613(b).

Rule 613 of the Arkansas Rules of Evidence states:

(a) *Examining Witness Concerning Prior Statement.* In examining a witness concerning a prior statement made by him, whether written or not, the statement need not be shown nor its contents disclosed to him at that time, but on request the same shall be shown or disclosed to opposing counsel.

(b) *Extrinsic Evidence of Prior Inconsistent Statement of Witness.* Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Rule 801(d)(2).

■ Here, Rule 613(b) was not violated — the witness was afforded an opportunity to explain or deny the prior inconsistent statement. The rule relied upon by appellant for reversal, that an admitted liar need not be proven one, is not contained in Rule 613 of the Rules of Evidence but rather is a matter of case law, as appellant recognizes in relying on *Ford v. State* and *Hinzman v. State.* Although the Rules of Evidence have been codified in this state, there still remain rules which are purely a matter of case law.

■■ Error may not be predicated upon a ruling by the trial court which admits evidence unless a timely objection appears in the record, stating the specific ground for the objection. *See* Ark. R. Evid. 103(a)(1). This is not a technical hurdle to be overcome but is rather a practical rule designed to give the trial judge a fair opportunity to decide whether the evidence is or is not admissible. A party cannot change the grounds for his objection on appeal. *Maxwell v. State*, 73 Ark. App. 45, 41 S.W.2d 402 (2001). This is what appellant attempts to do in the case at bar.

Appellant's second argument is that the trial court erred in not prohibiting Christopher Walker, an eyewitness to the crime, from testifying because of what appellant characterizes as a discovery violation. Two statements given by Parker to the police are at issue. On June 2, 1997, Parker gave a taped statement to Miller County Sheriff's deputies. The tape was subsequently lost and apparently never transcribed. On June 4, 1997, Parker gave a statement to Ocie Ratliff of the Arkansas State Police. This statement, in narrative form, was provided to the appellant and the State represented to the court that no other form of the statement was in existence.

In asking that the court bar Parker from testifying, defense counsel said:

> Your Honor, I guess I can sympathize to the dilemma Mr. Jones faces. However, according to the interview that Troy Gentry and Hays McWhirter generated, it says that this statement was taped by Officer Gentry. For one, we know there was a tape in existence at one point. Again, I'm not alleging any wrong-doing personally on the part of the prosecutor's office, but for the sheriff's office to just lose key pieces of co-defendant's testimony, with no explanation other than "We don't know," is not permissible.

The court then ruled:

> The defense will be allowed broad latitude to examine, and I'll presume them hostile, Officer Gentry and Trooper Ratliff, Detective Ratliff. The court finds no substantial evidence of a discovery violation, though there may well be a violation of the spirit of the discovery rule. You have every right to inquire of it, and the court believes that any impeachment that could be had from one of the series of verbal statements, can be had by a vigorous cross examination of Ratliff and Gentry and McWhirter as to the absent tape.

▊ Rule 17.1 of the Rules of Criminal Procedure provides that the prosecuting attorney shall disclose certain information to defense counsel which is within his "possession, control, or knowledge..." This obligation extends to information within the possession of others who have participated in the investigation on behalf of the State. *See Browning v. State*, 274 Ark. 13, 621 S.W.2d 688 (1981); Commentary to Article V.

For reversal on this point appellant relies on *Williamson v. State*, 263 Ark. 401, 565 S.W.2d 415 (1978), and *Hamm v. State*, 296 Ark. 385, 757 S.W.2d 932 (1988). Neither case requires reversal.

*Williamson* is a leading case in this state on discovery in general and stands for two propositions: (1) when a party is entitled to information through discovery, he is entitled to have it within sufficient time to permit his counsel to make beneficial use of the information, and (2) when a defendant is entitled to a witness statement, he is also entitled to the tape recording of the statement. *Williamson* did not deal with the State's loss of evidence nor did it hold that the trial court should prohibit the live testimony of a witness.

In *Hamm* the supreme court held that when the State had erased the tape of the defendant's confession, the State was prohibited from introducing into evidence transcript of the confession. But the court also said:

> This does not mean, however, that upon retrial the trial court cannot allow oral testimony about the confession into evidence. It is the transcription itself which was admitted in violation of the Rules of Criminal Procedure.

*See also Mays v. State*, 57 Ark. App. 282, 944 S.W.2d 562 (1997).

The problem in the case at bar is not so much one of a discovery violation as it is one of the loss by the State of evidence potentially useful to the defendant. Here the defendant quite reasonably sought Parker's earlier statements for the purpose of cross-examination. The problem is really one of fundamental fairness under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.[1]

In *Arizona v. Youngblood*, 488 U.S. 51 (1988), the Supreme Court held that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law. *See also, State v. Burk*, 653 N.E.2d 242 (Ohio 1995); *Wenzel v. State*, 306 Ark. 527, 815 S.W.2d 938 (1991); *Terrell v. State*, 26 Ark. App. 8, 759 S.W.2d 46 (1988). In the case at bar, there was neither an allegation nor proof of bad faith.

We conclude that the trial court's ruling in the case at bar was a reasonable one. Compare *State v. Montijo*, 727 A.2d 533 (N.J. Super.

---

[1] The due process issue was neither specifically raised in the trial court, nor made an issue on appeal.

Ct. Law Div. 1998). For the reasons stated the decision of the circuit court is affirmed.

Affirmed.

STROUD, C.J., ROBBINS, CRABTREE, and BAKER, JJ., agree.

ROAF, BIRD, and VAUGHT, JJ., concur in part, and dissent in part.

GRIFFEN, J., dissents.

SAM BIRD, Judge, concurring in part; dissenting in part. I agree that this case should be affirmed on the point involving the court's admission into evidence of the taped interview of Tequilla Hall, and I join in the majority opinion of Judge Jennings as to that point.

However, I dissent from the view expressed in the majority opinion that the trial court committed no error in not prohibiting the testimony of Christopher Parker because of the apparent loss by the sheriff's department of two recorded statements given by Parker to the Miller County Sheriff's Department. Consequently I join in the dissenting opinion of Judge GRIFFEN on that point.

Judge VAUGHT joins in this opinion.

ANDREE LAYTON ROAF, Judge, concurring in part; dissenting in part. I agree that this case should be affirmed on the point involving the court's admission into evidence of the taped interview of Tequila Hall, and I join in the majority opinion of Judge Jennings as to that point.

However, I conclude that the trial court committed error in failing to prohibit the testimony of Christopher Parker because of the apparent loss by the sheriff's office of Parker's two recorded statements. I join in Judge Griffen's dissent on this point, with the exception of the last paragraph before his conclusion, which suggests that our trial and appellate judges have been less than respectful of the rights of criminal defendants with regard to Ark. R. Crim. P. 17.1.

WENDELL L. GRIFFEN, Judge, dissenting. I respectfully disagree with the majority view that the trial court did not commit reversible error when it allowed the State to impeach

Tequila Hall over the objections of appellant's counsel by playing a tape of a statement Hall gave to investigators John Colridge and Alan Jordan of the Miller County Sheriff's Office on May 11, 1998. I also agree with appellant's contention that the trial court erred when it denied his request that Parker be prohibited from testifying after the State lost statements he gave on June 2 and 4, 1997, to Investigator Hays McWhirter and Deputy Troy Gentry of the sheriff's office. Therefore, I would reverse and remand on both points of the appeal.

## I. Admission of Hall's Statement
## as Extrinsic Evidence

During the State's direct examination of Hall at trial, Hall testified that "I did not hear Marcus Threadgill talking about that night [the night of Roberson's death]. I didn't overhear some conversation and I don't remember talking to a police officer about that." After counsel for the State informed Hall that he would play a tape to refresh her memory, Hall testified that "I know I talked to white officers Alan Jordan and John Colridge . . . I don't remember telling any of those officers that this defendant told me he shot that dude. If I said it, it's not true." The prosecution then indicated its intention to play the taped interview, State's Exhibit No. 25, to the jury. Appellant's counsel objected, citing Rule 613(b) of the Arkansas Rules of Evidence. The trial court overruled the objection, and the taped interview with Hall was played in the presence of the jury. After the statement was played, Hall repeated her testimony that the assertion to the investigators concerning Threadgill telling her he shot Roberson was untrue. Nevertheless, the trial court permitted the State to introduce and play a tape of another recorded interview with Hall.

In that statement, Hall stated that on the night of April 30, 1997, Parker and appellant knocked on the door of her apartment and asked her to take them to the home of Parker's sister, April Ross. Hall indicated in her statement that she dropped Parker and appellant at appellant's residence and that Parker and appellant changed clothes in her car while she drove them home. The next day, Hall's grandmother told her about Roberson's body being found. Hall stated in her statement to the investigators that she surmised that appellant and Parker had come to her house from where Roberson's body was found. At pages 94 and 95 of the abstract, the following exchange occurred between Investigator Alan Jordan and Hall:

HALL: She (Hall's grandmother) told me where the car was found, over by Cooper Tire, so I figured they (appellant and Parker) had jumped the fence and came to my house, cause I'm the closest they knew and they knew I had a car, for me to take them home. So I waited until I seen them again, and I ask Marcus (appellant) what happened. Marcus said he didn't know. He didn't know nothing about it, so I think it was about a week later we went over there, and they got scare and everything, so me, Lucinda . . .

JORDAN: Lucinda who?

HALL: Lucinda, I think it's Florence. That's his girlfriend. Me, Lucinda, Tory, and Stacy, I think Stacy had just got out of jail.

JORDAN: Stacy Collins?

HALL: Yea. We was over there talking and stuff, and Marcus told us he killed that dude, and that D'Wayne helped move him to the side of the road. I don't know if Dante had anything to do with it.

. . .

JORDAN: All right. Who told you, or did Marcus tell you himself that he killed . . .

HALL: Yea, he shot that dude.

JORDAN: And said D'Wayne just helped move the body?

HALL: Yea. He said D'Wayne helped them get the body out the car or whatever.

Counsel for the State insisted that the taped statement was being offered "for impeachment" and because "it's a prior inconsistent statement given by the witness. It is clearly admissible." The trial court ruled the taped statement admissible over the Rule 613(b) objection raised by appellant's counsel, stating, "It's admissible for another purpose, and that purpose is to impeach with a prior inconsistent statement, which is allowed by the rules. She's been given every opportunity to explain or deny the same." The trial court later stated, "Even if it (Rule 613 (b)) applies, this is an admission of a party opponent, and subsection (b) of Rule 613 doesn't apply if it's a party opponent."

Hall was plainly not a party opponent. The prosecution was against appellant, not Hall. Therefore, her taped statement was not admissible as an admission by a party opponent.

However, some members of the majority maintain that appellant's counsel failed to properly object to Hall's taped statement being played. They contend that because Arkansas does not follow the plain error doctrine, evidentiary objections must be specific in order to alert the trial court that error is possible. I believe appellant's counsel made a sufficiently specific objection to the playing of Hall's taped statement in order to preserve error for appellate review. It was enough that appellant's counsel stated, "We have an objection under Rule 613(b), where it states it is not permissible to impeach a witness by a statement."

Granted, counsel could have been more specific. He might have said, "We object to the prosecution attempting to impeach this witness by use of a prior inconsistent statement after she has testified that if she told the investigators the defendant shot the victim, she was not telling the truth." But counsel was not required to be that specific. Rule 103(a)(1) of the Rules of Evidence requires that objections to the admission of evidence be made timely and that they state "the specific ground of objection, *if the specific ground was not apparent from the context* . . . ." The trial court plainly understood that the objection was based on improper impeachment as shown by its statement that Hall's taped statement was "admissible for another purpose, and that purpose is to impeach with a prior inconsistent statement." Counsel for the State urged admission on the same ground.

The majority apparently believes that Hall's taped statement was properly played to the jury to impeach her credibility because she testified that she did not remember telling "any of those officers that this defendant told me he shot that dude. If I said it, it's not true." I disagree. When Hall testified that she did not remember making the statement that appellant told her he shot Roberson, but that if she told the police that, she was not truthful, her credibility was impeached. By allowing the State to introduce the taped statement, the trial court permitted the State to prove, using extrinsic evidence, that Hall was a liar. But she had already admitted lying. A witness who admits during trial testimony that she made a prior inconsistent statement is impeached, and Rule 613(b) prohibits introduction of extrinsic evidence under these circumstances. *See Kennedy v. State*, 344 Ark. 433, 42 S.W.3d 407.

The trial court's error becomes even more apparent when one realizes that it allowed the State to play a second tape of a May 14, 1998, investigatory interview with Hall despite the fact Hall had acknowledged making the first recorded statement, renounced her statement as untruthful, and explained why she lied during the first statement. There was no justification for admitting a second taped statement after Hall acknowledged having made the first statement and denied its truthfulness. Appellant objected to the second tape recorded statement (State's Exhibit 26) as being cumulative and unnecessary. Appellant cannot change the grounds for a trial court objection on appeal and I do not refer to State's Exhibit 26 as being a Rule 613(b) objection. Rather, State's Exhibit 26 demonstrates the significance of the trial court's basic error in admitting Exhibit 25, the first taped-recorded statement.

If the trial court's evidentiary ruling was erroneous, we must consider whether the error was prejudicial to appellant, *i.e.*, whether the evidence of guilt was overwhelming and the error slight. The trial court allowed the State to play Hall's entire statement to the jury, not simply that portion dealing with the alleged admission by appellant about killing Roberson. The trial court also allowed the State to introduce the testimony of Sabrina Maxwell Herron that Hall told her the appellant had confessed to killing Roberson, despite appellant's timely hearsay objection. The State now admits that the trial court erred in admitting Herron's testimony because it was inadmissible hearsay. The prosecutor referred to Hall's unsworn statements in closing argument. If Hall's statement and Herron's hearsay testimony are excluded, the only overwhelming evidence of guilt is the testimony of Christopher D'Wayne Parker, appellant's co-defendant, who testified he saw appellant shoot Roberson. However, appellant emphatically objected to Parker's testimony because the State violated Rule 17.1(a)(ii) of the Arkansas Rules of Criminal Procedure. Because I believe the trial court erred in permitting Parker to testify, I would hold that its error in permitting Hall's taped statement to be played to the jury in its entirety was prejudicial so as to compel reversal.

## II. Violation of Rule 17.1(a)(ii)

Rule 17.1(a)(ii) of the Arkansas Rules of Criminal Procedure mandates that the prosecuting attorney must disclose, upon timely request "any written or recorded statements and the substance of any oral statements made by the defendant or a co-defendant." In order to invoke this rule, the appellant must show (1) that a timely

request was made, (2) that the State failed to comply with the request, and (3) that there was resulting prejudice to the defense. *See Earl v. State*, 272 Ark. 5, 612 S.W.2d 98 (1981).

Following a substitution of counsel and two continuances, a pre-trial hearing was held on February 3, 2000, and counsel for appellant requested that the State produce two taped statements that Christopher Parker had given to the sheriff's department on June 2 and 4, 1997. The statements, although referenced in the prosecutor's file, were not physically part of the file. The prosecutor stated he would make a note of the request, but did not produce the statements before the date of trial. When the parties met for trial on February 22, 2000, twenty days later, counsel for appellant again requested the statements by Parker. Then the prosecutor disclosed, for the first time, that the sheriff's department no longer had the statements. Counsel for appellant asked the trial court to sanction the prosecution for the discovery violation by excluding Parker's testimony. Although the trial court agreed the State had violated the spirit of the discovery rule, it declined appellant's request to prohibit Parker's testimony. Instead, the trial court indicated that it would allow the defense "broad latitude" during cross examination of the sheriff's officers as a remedy for the violation. The State did not argue at trial or on appeal that appellant's discovery request was untimely. Rather, it contends appellant was not prejudiced by the discovery violation.

Our supreme court specifically addressed this problem in *Williamson v. State*, 263 Ark. 401, 565 S.W.2d 415 (1978), where the State failed to produce the statement of a witness that was available. The supreme court reversed the trial court's failure to require the State to disclose the statement. Writing for the court, Justice Howard stated:

> We are persuaded that Rule 17.1 imposes a duty upon the state to disclose to defense counsel, upon timely request, all material and information to which a party is entitled in sufficient time to permit his counsel to make beneficial use thereof. Any interpretation of Rule 17.1 to the contrary would indeed make a farce of a rule which has as its purpose to reduce delays during trial and taken as a whole lending more conclusiveness and completeness in the disposition of criminal cases and disclosure...

> We are further persuaded that appellant was not only entitled to the written transcription prepared by the state from the recorded statements, but appellant was entitled to discover the tapes not only

because the tapes represented the best evidence, but without the tapes, appellant had no way of comparing the transcription in order to determine if the transcription was a correct reproduction of the recordings. Indeed, the statement as well as the tapes would have been most helpful to appellant in his cross-examination of state's witnesses.

*Id.* at 405, 565 S.W.2d at 418.

Parker was not merely a witness. He was a co-defendant in the murder prosecution and the only eyewitness to the homicide presented by the State. Because there was no way for the defense to compare Parker's trial testimony with his prior statements, appellant was prejudiced in cross-examination of Parker. No cross-examination of the sheriff's witnesses could replace the loss of Parker's statements because the statements and tapes were needed in order to establish the circumstances surrounding Parker's interrogation.

In *Hamm v. State*, 296 Ark. 385, 757 S.W.2d 932 (1988), the supreme court reversed and remanded a conviction for aggravated robbery after the trial court denied appellant's motion to suppress a statement containing his confession. The confession was recorded on a micro cassette and transcribed by a police secretary. However, the confession was erased when the tape was reused; thus, the State was unable to provide the appellant with the recording of the confession in order to compare the recording to the transcript. The appellant moved to suppress the statement, specifically citing Rule 17.1(a)(ii) and its decision in *Williamson, supra*. Rejecting the State's argument that the trial court error was harmless, Justice Dudley, writing for the supreme court, stated:

> The prejudice lies in the fact that the recording was the best evidence, and that without it, the defendant had no way of determining if the transcription was an accurate reproduction of his recorded statement. It was established that the transcription was not perfect, although the errors that were pointed out were admittedly only typographical. In any event, we do not require an appellant to show prejudice when it would be impossible as a practical matter for him to do so.

*Id.* at 389, 757 S.W.2d at 934.

Here, appellant's counsel was deprived of the actual recording of Parker's statements as well as any transcripts. Parker testified in a jury trial that began February 22, 2000, more than two and a half

years after the statements were made. Without the statements, counsel for appellant could not know whether Parker's trial testimony was consistent with anything he said earlier. Appellant's counsel certainly could not know whether the witnesses from the sheriff's department were testifying accurately, not to mention truthfully, concerning anything Parker told them in those statements.

There is no practical difference to the defense of a murder prosecution whether the State violated the discovery mandate of Rule 17.1(a)(ii) due to negligence, incompetence, or mendacity. The effect of the violation was to deny appellant and his counsel access to critical information obtained from the chief prosecution witness. Had the trial court determined that Rule 17.1 was violated by the prosecutors such that sanctions for contempt were appropriate, imposing that sanction would not have repaired the damage done to appellant's ability to cross examine Parker and the investigators who testified about Parker's statement. Rule 17.1 exists to ensure that the defense has access to information, not to uphold the trial court's power. I see no reason why the State should be allowed to violate the discovery requirement and deny persons accused of crimes vital information that is plainly essential to effective trial preparation and cross examination.

It is not unprecedented to preclude a party that violates discovery rules from introducing evidence or calling a witness. Rule 37(b)(2)(B) of the Arkansas Rules of Civil Procedure plainly permits the court to "make such orders in regard to the failure as are just . . ." including "[a]n order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence." That rule does not require a finding of willful or deliberate disregard under the circumstances before sanctions may be imposed for failure to comply with the discovery rules. See *Viking Ins. Co. v. Jester*, 310 Ark. 317, 836 S.W.2d 371 (1992); *Cook v. Wills*, 305 Ark. 442, 808 S.W.2d 758 (1991); *Tricou v. ACI Mgt., Inc.*, 37 Ark. App. 51, 823 S.W.2d 924 (1992).

There is no excuse whatsoever for trial and appellate judges to treat the discovery obligation prescribed by Rule 17.1 of the Arkansas Rules of Criminal Procedure with less respect or to otherwise operate as if the discovery interests of persons accused of crimes are somehow less important than those of persons involved in civil litigation. As long as the consequences of violating Rule 17.1 operate to disadvantage criminal defendants, we have no reason to

expect that the violations will decrease, whether they result from incompetence, negligence, honest mistake, bad faith, or inadvertence. If we were to reverse and remand this case for new trial with instructions that the prosecution be prohibited from calling Christopher Parker as a witness until the defense was provided the recordings and transcripts of his two pretrial statements, I suspect that the prosecution would be highly motivated to locate and produce the recordings and statements. While doing so might create other issues (such as explaining why the statements could not be produced earlier and why the recordings and transcripts should be deemed valid), those difficulties should properly be suffered by the prosecution as an indirect result of failure to comply with the discovery rule.

### Conclusion

Therefore, I would reverse and remand on both points. Specifically, I would hold that the trial court abused its discretion and committed prejudicial error by allowing the State to introduce extrinsic evidence of a prior inconsistent statement by Tequila Hall after Hall testified that the prior statement was untrue. I would also hold that the trial court erred when it refused to exclude Parker's testimony.