Larry Norris, Director Arkansas Department of Correction Post Office Box 8707 Pine Bluff, AR 71611-8707
Dear Mr. Norris:
You have requested my opinion on certain issues related to the questions of when and if the Director of the Arkansas Department of Correction should expunge an eligible offender's record under the Alternative Service Act, which was enacted as Act 378 of 1975.[1] You have described various hypothetical scenarios relating to sentencing under Act 378 of 1975 and have posed various questions regarding the possible expungement of records in each.
Your specific questions are the following:
 (1) Assume the following facts: An inmate receives a 10-year sentence with a 7-year suspended sentence; he completes 3 years and is discharged from ADC; 2 years later, he commits another crime and returns to ADC; the 7-year imposition of sentence is not revoked; after he has discharged his new time and 7 years have passed without further time served in ADC, the inmate can have his original sentence expunged. How does ADC, for purposes of determining gratification under Act 378, treat suspended time?
 (2) Assume that an inmate receives a 10-year sentence with a 7-year suspended sentence. Can his sentence be expunged after he is discharged or must the Director wait until the 7-year suspended sentence is completed?
 (3) Assume the following facts: An inmate receives a 10-year sentence with a 7-year suspended sentence; stipulations in the plea agreement state that the suspended sentence must be served without breaking federal, state or municipal laws; the inmate completes the 3-year sentence but later commits a new offense. Under these circumstances:
(a) Can the 3-year sentence be expunged?
 (b) If so, can it be expunged while the inmate is still in ADC's custody serving the second sentence?
(c) Does the director have to wait until the individual is released?
 (d) Does the Director have to wait until the balance of the 7-year suspended sentence is completed, or does the 7-year suspended sentence start over at the completion of the new charge?
 (e) Should ADC review the terms and conditions of sentencing (i.e., plea agreement) before issuing a certificate of expungement under Act 378?
 (4) An inmate is sentenced for a sex offense and has completed his sentence. Can we expunge the sentence and register him as a sex offender at the same time?
RESPONSE
With respect to your first question, I believe that the Arkansas Department of Correction (the "ADC") must treat suspended time as part of an offender's sentence. Consequently, an offender will not be eligible for an expungement of his record until the offender has completed his sentence, including any time served on suspension. Once an eligible offender has completed the term of a suspension under an initial sentence pursuant to Act 378 of 1975 (the "Act"), unless a rule or regulation of the board administering the Act dictates otherwise, the offender will be entitled to an expungement of the initial conviction. In my opinion, so long as the sentencing court has not revoked the initial sentence and resentenced the offender under some statutory scheme other than the Act, he will be entitled to an expungement of his record notwithstanding the fact that he has been convicted of another offense during the term of his initial sentence. I believe the ADC lacks the authority to determine that the sentencing court should have revoked the initial sentence and resentenced an offender pursuant to some other statute that would not allow for an expungement of the offender's record. Pursuant to the express terms of the Act, the only basis for denying an eligible offender an expungement upon the completion of his sentence is that a rule or regulation of the board charged with administering the Act would preclude or condition an expungement.[2] See former A.C.A. §§ 16-93-505(d)(4) and -510(a). However, I must stress that I am unable to opine on all the implications of sentencing in the case you describe. Only an attorney fully acquainted with all the attendant facts could properly advise you on this matter.
With respect to your second question, I believe that if the offender is sentenced under the Act, he will not be eligible for an expungement of his conviction until the term of his entire sentence has run, including the 7-year suspended sentence. See Arkansas Post Prison Transfer BoardPolicies and Procedures, § VIII(1) (acknowledging that only after an offender has discharged his "entire sentence" under the Act will he be eligible to have his record expunged).
With respect to your third question, as stated above, I believe an offender must complete his entire sentence, including any period of suspension, before he will be eligible to have his conviction expunged. The Act is unclear on the question of whether the term of a suspension on the initial conviction can be deemed to run during the period the offender is serving a sentence on a second conviction. Regardless of whether an offender might be deemed to be serving suspended time on one conviction while incarcerated on another conviction, I believe the offender will be obliged to serve only the remainder of his suspended sentence on the first conviction in order to qualify for an expungement of his record.
With respect to the issue of whether a plea agreement might affect the availability of expungement under the Act, former A.C.A. § 16-93-505(d)(4) charged the Commission on Community-Based Rehabilitation (and, by implication, its successor agencies) with sole authority to determine the circumstances that would preclude expunging the conviction of an offender sentenced under the Act. Former A.C.A. § 16-93-510(a) expressly provided that if the court resentences an offender under the Act for violating the conditions of his original sentence, expungement will remain available to the offender upon the completion of his revised sentence unless an applicable rule or regulation provides otherwise. Given this statutory restriction, I do not believe that a prosecutor could negotiate, or a court could approve, a plea agreement providing that an eligible offender sentenced under the Act could be denied an expungement for violating a condition of his initial sentence. In this respect, I believe the Act differs from other expungement statutes that afford the judge the discretion to deny an expungement — and, by extension, that afford a prosecutor the option to negotiate a plea that would deny an offender an expungement — upon the offender's violating a term of his sentence, including a term that forbids the offender to reoffend during the term of his sentence. Assuming, then, the prosecutor and the court scrupulously observed the literal terms of the Act, I do not believe ADC would need to review a plea agreement before determining that an offender who has completed his sentence should be issued a certificate of expungement. However, I appreciate that prosecutors in their plea negotiations and judges in their sentencing orders might exercise a discretion that would clearly be available in other contexts but that might not be available under the Act. Accordingly, I believe prudence would dictate that counsel fully acquainted with the facts review the record in each particular case and recommend action based upon that review. If counsel concludes that the provisions of a court order directly conflict with the legislature's directives in the Act, counsel may advise that the ADC seek a declaratory judgment clarifying its legal obligations.
Finally, I believe the answer to your fourth question is "yes."
Question 1 — Assume the following facts: An inmate receives a 10-yearsentence with a 7-year suspended sentence; he completes 3 years and isdischarged from ADC; 2 years later, he commits another crime and returnsto ADC; the 7-year imposition of sentence is not revoked; after he hasdischarged his new time and 7 years have passed without further timeserved in ADC, the inmate can have his original sentence expunged. Howdoes ADC, for purposes of determining gratification under Act 378, treatsuspended time?
Under the hypothetical you have posed, an offender eligible for sentencing under the Act serves three years of a ten-year sentence; following his release, he serves an additional two years of a seven-year suspended sentence; he then commits another crime and is convicted, serving his time on the second conviction. At no point does the original sentencing court revoke its initial sentence and resentence the offender based upon the fact of the second felony conviction. Under these circumstances, the pertinent questions would appear to be: (a) whether an expungement of the offender's record relating to the first conviction would even be available; (b) if so, whether the offender would need to serve the suspended portion of his initial sentence before being eligible to have his record on the first conviction expunged; (c) whether it would be appropriate to credit against the full seven-year term of the suspended sentence on the first conviction the two years of time served prior to the offender's incarceration on the second conviction; and (c) whether an offender incarcerated on a second conviction could be deemed during his term of incarceration to be serving his suspended time on the first conviction. Whatever computation regarding suspended time might apply, you suggest in your hypothetical that once the offender has served that suspended time, "the inmate can have his original sentence expunged."
As a general proposition, an offender who completes the entire sentence imposed under the Act, including suspended time, will remain eligible for expungement under the Act. In such a scenario, the provisions of the Act will remain the governing authority. I gather from your question that your concern arises from the fact that the sentencing court in your hypothetical has taken no action to revoke its sentence in the wake of the inmate's second conviction,[3] raising the question of whether the inmate remains eligible to have his initial conviction expunged once the 7-year suspended sentence has run. At issue, then, is whether, in light of the sentencing court's inaction, you are under a duty to expunge the inmate's conviction upon the completion of his original sentence.[4]
In a parenthetical characterization, you describe certifying an expungement of the offender's records under your hypothetical scenario as "Our Current Practice." This characterization suggests that courts with at least some regularity fail to revoke the terms of sentences under the Act when an eligible offender violates a condition of his initial sentence. In my opinion, any such failure to revoke a sentence and to resentence an offender might be permissible if the violation of the initial sentence fell short of the commission of a second felony. Former A.C.A. § 16-93-507(b)(3) provided that if an offender violated the terms of his sentence, the court might revoke the sentence in accordance with the procedures for revoking probation. See A.C.A. §§ 5-4-309 and -310. Subsection 5-4-309(d) of the Code (Supp. 2003) provides that if a court determines at a suspension hearing that an offender has violated a condition of his suspended sentence, the court "may revoke the suspension." (Emphasis added.) The highlighted language clearly invests the sentencing court with discretion to determine whether to revoke a suspension and resentence the offender.
However, my analysis of this issue is complicated by the fact that two statutes, A.C.A. §§ 16-93-604 and -607 (1987), might have obliged the court to revoke an offender's sentence and to resentence him to incarceration for the remaining term of his initial suspended sentence. Both statutes absolutely mandate that an offender who, within certain designated time periods, commits a felony while serving a suspended sentence for having committed another felony must be incarcerated for the balance of his suspended term and serve the sentence on his second conviction consecutively to the sentence on his first conviction.[5]See A.C.A. §§ 16-93-604(d)(2) and -607(e)(2). Both of these statutes were enacted after the Act and both more expressly address the question of how a court should treat an offender who commits a second felony during the course of serving a suspended sentence on his first conviction. Applying standard principles of statutory construction, then, these statutes should have controlled over the Act if the conditions recited in the later statutes applied.[6] Had a sentencing court applied either of these statutes, the effect may well have been to take the whole issue of sentencing outside the scope of the Act, in the process entirely mooting the issue of how to treat a suspended sentence in determining when or if to issue an expungement of an offender's record.
I gather from your question that you are concerned that the sentencing court's reported failure to resentence the offender upon his second conviction may have implications for how you should proceed. In my opinion, regardless of whether a sentencing court should have applied A.C.A. § 16-93-604(d)(2) or -607(e)(2), so long as no court of competent jurisdiction has revoked an initial sentence under some applicable legislation other than the Act, the ADC and Post Prison Transfer Board have no choice but to proceed under the Act, notwithstanding their recognition that appropriate judicial action might have removed the entire sentencing determination from the provisions of the Act. Compare
Ark. Op. Att'y Gen. No. 2002-275 (opining that the Arkansas State Police and the Arkansas Crime Information Center, as executive agencies, could not second-guess a court's order to expunge and to seal records pursuant to the First Offender Act, A.C.A. § 16-93-301 through -303 (Supp. 2003 1987), even if the ASP and ACIC knew that the order to expunge applied to an individual who was in fact not a first offender). Under the facts proposed in your hypothetical, then, which posits that the last formal sentencing activity by a court of competent jurisdiction occurred under the Act, I believe the ADC would be correct in itself proceeding under the Act, asking itself, as you have done, how it should treat suspended time and how it should handle the issue of expungement.
Having concluded that the ADC should proceed under the Act regardless of what should have occurred under the circumstances recited in your hypothetical, I will offer a general review of the sentencing requirements. Subsection 16-93-507(a) of the former Code provided that upon an offender's conviction, the court should postpone the imposition of sentence pending an investigation of whether the offender is eligible for sentencing under the Act. Subsection 16-93-507(b) of the former Code provided:
 Upon the determination by the court, after an appropriate hearing, that the offender is an eligible offender, as defined by this subchapter, and that the offender's diversion is proper, the court may divert the eligible offender in a manner consistent with the following alternatives:
 (1) Suspend the imposition of the sentence or place the eligible offender on probation;
 (2) Divert the eligible offender to an alternative service program, as defined by this subchapter, for a designated period of time not to exceed three (3) years and consistent with the rules and regulations established by the commission,[7] with the advice and consent of the director,[8] for the operation of alternative service programs and the supervision of eligible offenders participating in those programs; during the designated period, the sentencing trial court shall maintain jurisdiction over the eligible offender so sentenced.
 (3) In the event a person sentenced under subdivision (1) or (2) of this subsection violates any terms or conditions of his sentence or probation, revocation of the sentencing or probation shall be consistent with the procedures established by law for the revocation of probation.[9] Upon revocation, the person shall thereafter be sentenced consistent with subdivision (4) or (5) of this subsection;
 (4) Sentence the eligible offender to the custody of the Department of Correction under applicable penalty provisions provided by law for the offense for which he is convicted subject to the following:
 (A) The eligible offender so sentenced shall be subject to transfer by the commission, with the advice and consent of the director, to an alternative service program, as provided under § 16-93-509;[10] and
 (B) the eligible offender shall be immediately eligible for pardon or parole under the rules and procedures existing or established by the State Board of Pardons and Paroles; or
 (5) Sentence the eligible offender to the custody of the Department of Correction under applicable penalty provisions provided by law for the offense for which he is convicted, subject to the following:
 (A) The eligible offender so sentenced shall be subject to transfer by the Department of Correction, upon the approval of the commission, as provided § 16-93-509; and
 (B) The offender shall be eligible for pardon or parole in the same manner and within the same time as he would have been had he not been sentenced under the provisions of this subchapter as an eligible offender.
(Emphasis added.)
This statute is striking in several respects. First, it bars a sentencing judge upon revoking a sentence from inexorably resentencing an offender under the penalty provisions generally applicable to the offense for which he was convicted. Rather, it conditions any such resentencing by providing, depending on the resentencing option selected by the court, that either the Commission (now the Post Prison Transfer Board), with the advice and consent of the Director of the ADC, or the ADC, with the consent of the Commission (now the Post Prison Transfer Board), may transfer the eligible offender to an alternative service program. Secondly, as one of my predecessors noted in Ark. Op. Att'y Gen. No.91-437, it bars the sentencing judge upon revoking an initial sentence based upon an offender's violation of his initial sentence from declaring the offender ineligible for expungement upon completing his new sentence. My predecessor offered the following analysis:
 Act 378 of 1975, codified at A.C.A. § 16-93-501 to -510 (1987 and Cum. Supp. 1991), appears to contemplate expungement of a person's records despite the fact that his or her probation has been revoked. Section 16-93-507(b), subsections (3), (4), and (5) specifically address the sentencing of a person upon the revocation of his or her probation, and § 16-93-510(a) specifically provides for expungement of the records of a person sentenced under those sections.
I fully concur with my predecessor's analysis, subject only to the qualification that the Commission on Community-Based Rehabilitation or a successor agency charged with authority to administer the Act may by applicable rule or regulation have set forth conditions that might preclude expunging the record of a particular offender sentenced under the Act. See former A.C.A. §§ 16-93-505(d)(4) and -510(a). Only a finder of fact acquainted with the circumstances of any given case and with the applicable rules and regulations could determine whether an eligible offender might be entitled to an expungement of his record. Specifically with respect to the court's reported failure to revoke the initial sentence in your hypothetical, I will merely note that, under the statutes just referenced, the Commission on Community-Based Rehabilitation and its successor agencies could have adopted rules and regulations prohibiting expungements that might apply regardless of whether a sentencing court had revoked its initial sentence. I will further note that the Arkansas Post Prison Transfer Board Policies andProcedures contain no provision expressly declaring the commission of another felony during the term of a suspension a circumstance precluding an expungement.
With respect to the timing of any expungement determination, as reflected in § VIII(1) of the Arkansas Post Prison Transfer Board Policies andProcedures, once an offender sentenced under the Act has served his "entire sentence," the Post Prison Transfer Board will review an ADC report to determine whether the offender is entitled to an expungement under applicable law. In my opinion, suspended time is a portion of an offender's sentence, and that time must elapse before an offender will be eligible for a review to determine whether he should have his record expunged. This conclusion accords with the general proposition that if an offender violates a condition imposed by a court at any point during the term of a sentence comprising incarceration and a suspended term, upon determining that the violation has occurred, the court may "resentence" the offender to serve out the remaining term of the suspension in incarceration. See Chadwell v. State, 80 Ark. App. 133, 135 (2002),91 S.W.3d 530 (holding that a suspended sentence starts running at the time of an inmate's release and that an inmate who violates the conditions of his suspension may be ordered incarcerated for "the remainder of his original sentence"); Bramucci v. State, 26 Ark. App. 8, 62 S.W.3d 10,62 S.W.3d 10 (2001) (generally discussing and applying this principle). With respect to a court's resentencing authority under the Act, this general principle is qualified only to the extent that the ADC or the Post Prison Transfer Board may direct that an offender resentenced to incarceration be diverted to alternative service. See former A.C.A. §§ 16-93-507(b)(4) and -507(b)(5).
Finally, I gather from your hypothetical that in the absence of any contrary direction by a court, the ADC would (and apparently does) avoid crediting time served on the second conviction against unexpired suspended time to be served under the first conviction. In the absence of any guiding authority, I am unable to opine whether this practice is permissible. Legislative or judicial clarification appears warranted.
Question 2 — Assume that an inmate receives a 10-year sentence with a7-year suspended sentence. Can his sentence be expunged after he isdischarged or must the Director wait until the 7-year suspended sentenceis completed?
As discussed in my response to your previous question, I believe the Director must wait to issue the expungement until the seven-year suspended sentence is completed. The suspended portion of a sentence is clearly a portion of "the entire sentence" as referenced in Arkansas PostPrison Transfer Board, Policies and Procedures, § VIII and must be completed before the offender's record can be expunged.
Question 3 — Assume the following facts: An inmate receives a 10-yearsentence with a 7-year suspended sentence; stipulations in the pleaagreement state that the suspended sentence must be served withoutbreaking federal, state or municipal laws; the inmate completes the3-year sentence but later commits a new offense. Under thesecircumstances:
 a. Can the 3-year sentence be expunged?
 b. If so, can it be expunged while the inmate is still in ADC's custody serving the second sentence?
 c. Does the director have to wait until the individual is released?
 d. Does the Director have to wait until the balance of the 7-year suspended sentence is completed, or does the 7-year suspended sentence start over at the completion of the new charge?
 e. Should ADC review the terms and conditions of sentencing (i.e., plea agreement) before issuing a certificate of expungement under Act 378?
Specifically with respect to subsection (a) of your question, I do not believe the Act authorizes the expungement of only a portion of a sentence. Under the terms of your hypothetical, the three-year period of incarceration was only a portion of a ten-year sentence, which I believe must be completed before an offender is eligible for expungement of his conviction. Consequently, the answer to subsection (b) of your question is "no" and the answer to subsection (c) is "yes."
With respect to subsection (d) of your question, I believe that the Director must wait until the seven-year suspended sentence has run its term before certifying an expungement of an offender's record. As noted in my response to your first question, the court in Chadwell v. State,80 Ark. App. 133, 135, 91 S.W.3d 530 (2002) held that a court may order incarcerating an offender who violates a condition of his suspended sentence only for the unexpired term of the suspension. Extrapolating from this principle, I believe that an eligible offender will become entitled to an expungement of his record once he completes the term of the suspension on his first conviction. As I further noted in my previous discussion, I am unable to opine on the unresolved question of whether an offender might be deemed under the Act to be serving the unexpired portion of his initial suspended sentence while serving a term of incarceration on a conviction for a second offense committed during the term of the initial suspended sentence.
With respect to subsection (e) of your question, as previously noted, the Act authorized the Commission on Community-Based Rehabilitation and its successor agencies to establish standards relating to alternative service and rules and regulations setting forth when expungement should be denied. See former A.C.A. §§ 16-93-506(a) and 16-93-505(d)(4). The powers of that commission now reside in the Post Prison Transfer Board. See Acts 1989, No. 937, § 1; Acts 1993, Nos. 530, 547. Specifically with respect to expungement, former A.C.A. § 16-93-505(d)(4) expressly imposed upon the Commission on Community-Based Rehabilitation (and, by implication, its successors) the duty and responsibility to "[e]stablish, with the advice and consent of the director, circumstances under which the records of eligible offenders sentenced or place on probation under this subchapter should not be expunged, pursuant to § 16-93-510." In my opinion, this statute authorized whatever agency was charged at any given point with administration of the Act to enact rules and regulations setting forth the circumstances under which any given offender would be denied the possibility of obtaining an expunged record. Nothing in the Act even remotely supports the proposition that a prosecutor in an individual case could independently negotiate a plea that would either allow or deny an offender an expungement under conditions not contained in the administering agency's applicable rules and regulations.
I am further struck by the fact that the Act flatly denies the sentencing court any discretion to determine when or if an expungement shall issue in any particular case. Former A.C.A. § 16-93-507(b)(3) is unequivocal in declaring that if an offender violates a condition of his initial sentencing, the court shall resentence him only pursuant to the provisions of A.C.A. § 16-93-507(b)(4) or A.C.A. § 16-93-507(b)(5), which authorize the court to resentence the offender under applicable penalty provisions for the crime the offender committed, subject to the condition that the offender might be transferred to an alternative service program by the Commission or the ADC. These statutes must be read in conjunction with former A.C.A. § 16-93-510(a), which is likewise unequivocal in declaring that once an offender has completed his sentence under the Act, he will be entitled to an expungement of his record "except under such circumstances as may be determined by rules and regulations promulgated by the commission with the advice and consent of the director." Read together, these statutes suggest that only the Commission and its successors, by rule or regulation, could set conditions under which an expungement should not issue. Simply stated, then, under the Act, a prosecutor lacks the authority to negotiate, and the court lacks the authority to approve, a plea agreement that would deny an offender an expungement of his record for any reason not expressly recited in an applicable rule or regulation issued the agency administering the Act.
However, having ventured this opinion, I recognize the practical possibility that at some point a prosecutor used to exercising great latitude in negotiating plea agreements may have persuaded a court to approve a plea agreement barring expungement under the Act if the offender broke any law during the term of his sentence.[11] Presumably, this condition would appear both in the plea agreement and in the court's original sentencing order. See former A.C.A. § 16-93-508(a)(4) (obliging the court in its sentencing order to set forth "[a]ny applicable terms and conditions of the sentence or probation").[12]
Assuming a plea agreement and a sentencing order were to contain a provision precluding any expungement of an offender's record if the offender broke any law during the term of his initial sentence, the question would arise whether the ADC, in reliance on the court's initial sentencing order, should deny an eligible offender an expungement of his record upon the completion of his sentence under the Act. In my opinion, this question is extremely difficult to answer because it raises serious issues regarding the constitutional separation of powers among the various branches of government.
The principle of separation of powers, which is set forth at Ark. Const. art. 4, §§ 1 and 2, provides that the three branches of government shall independently pursue their various functions. Under the classic division of governmental powers, the legislature makes the laws and appropriates public revenues, the executive administers the laws and expends the appropriations, and the judiciary interprets the laws. Federal ExpressCorp. v. Skelton, 265 Ark. 187, 197-98, 578 S.W.2d 1 (1979).
Under the circumstances of your hypothetical, the ADC is charged with executing the Act as crafted by the legislature. As reflected in the foregoing discussion, the ADC might well conclude that, under the terms of the Act, it is irrevocably charged by the legislature with certifying the expungement of an eligible offender's record once it is established that the offender has successfully completed his sentence. See former A.C.A. § 16-93-510(a). The ADC might further conclude that, notwithstanding any sentencing order or plea agreement containing contrary provisions, the trial court is precluded under the terms of the Act from imposing any condition on sentencing that would deny an eligible offender an expungement of his record for any reason other than one expressly authorized by the agency administering the Act. In terms of the separation of powers, then, the issue is whether a court order conditioning the issuance of an expungement for reasons other than those authorized by the agency administering the Act would constitute both an impermissible judicial diversion from legislative directives and an impermissible directive that an executive agency act in contravention of legislative directives. Stated differently, the issue is whether a court order thus conditioning the issuance of an expungement would constitute an encroachment on legislative prerogatives by essentially rewriting the Act. See Ark. Op. Att'y Gen. No. 2001-317 (opining that a municipal judge may not order the impoundment of vehicles when the legislature has expressly directed that the owners should maintain custody). Consequently, the ADC might well regard itself as conflicted, having been charged by the legislature to do one thing and charged by the judiciary to do another.
In my capacity as the issuer of formal opinions, I am charged only with articulating the law as I read it, not with advising a requestor regarding what course he should follow. However, I will note again that under the principle of separation of powers, it is the task of the judiciary to interpret the law. Given this fact, it would appear that a court would be uniquely situated to declare what course the ADC should follow should it find itself in the quandary discussed above.
Question 4 — An inmate is sentenced for a sex offense and has completedhis sentence. Can we expunge the sentence and register him as a sexoffender at the same time?
In my opinion, a sex offender's sentence can be expunged, and he can, at the same time, be registered as a sex offender. The Sex and Child Offender Registration Act of 1997, A.C.A. §§ 12-12-901 through -920 (Repl. 1999 Supp. 2003), provides for the registration of any offender who meets any of the following conditions:
 A person who is serving a sentence of incarceration, probation, parole, or other form of community supervision as a result of an adjudication of guilt on August 1, 1997, for a sex offense[.]
A.C.A. §§ 12-12-905(a)(2).
This description would apply to anyone who was sentenced under the Act and who completes his sentence currently or in the future.
Your question appears to be concerned with whether the requirement of registration would in any sense be inconsistent with the legal effects of an expungement under the Act. In my opinion, it would not. At issue, in my estimation, is whether the requirement of registration would conflict with former A.C.A. § 16-93-502(7)(A), which defines the term "expunge" as "signifying that the defendant was completely exonerated of any criminal purpose and that the disposition shall not affect any civil rights or liberties of the defendant." This definition raises the question of whether requiring an offender entitled to an expungement to register as a sex offender could be characterized as "affecting" his civil rights or liberties or, stated differently, as enhancing his punishment.
In Kellar v. Fayetteville Police Department, 339 Ark. 274, 5 S.W.3d 402
(1999), the Arkansas Supreme Court addressed the question of whether a child molester convicted prior to the enactment of the Sex and Child Offender Registration Act of 1997 could be made to register as a sex offender without violating the ex post facto clauses of the Arkansas and U.S. Constitutions. See U.S. Const. art. 1, § 10 and Ark. Const. art. 2, § 17. As the court noted in Kellar, one possible feature of an impermissible ex post facto law is that it "`makes more burdensome the punishment for a crime, after its commission. . . ."' 339 Ark. at 280
(quoting Beazell v. Ohio, 269 U.S. 167, 169 (1925)). In analyzing the application of this standard, the court observed:
 Both parties concede that the law was applied retrospectively; therefore, we are left to decide only whether the Act is punitive in nature or merely regulatory. If it is regulatory, or civil in nature, it cannot be an ex post facto law. See, e.g., Weaver v. Graham, 450 U.S. 24 (1980); United States v. Ward, 448 U.S. 242 (1979). The overriding inquiry in such situations was enunciated by the Court in DeVeau v. Braisted, 363 U.S. 144 (1960):
 The question in each case where unpleasant consequences are brought to bear upon an individual for prior conduct, is whether the legislative aim was to punish that individual for past activity, or whether the restriction of the individual comes about as a relevant incident to a regulation of a present situation. . . .
 363 U.S. at 160.
339 Ark. at 280. The court concluded that the provisions of the legislation requiring the registration of sex offenders do not "impose any affirmative disability or restraint on an offender. . . ." Id. at 284. The court further concluded that "the dissemination of information regarding criminal conduct, without more, is not punishment when done to advance a legitimate government purpose or objective." Id. at 284-85 (citing E.B. v. Verniero, 119 F.3d 1077, 1000-200 (3d. Cir. 1997). In support of this conclusion, the court recited a long line of cases from other jurisdictions reaching a similar conclusion.
In light of the court's holding in Kellar, I believe a reviewing court would not declare there to be a conflict between former A.C.A. § 16-93-502(7)(A), which provides that an expunged conviction "shall not affect any civil rights or liberties of the defendant," and current A.C.A. § 12-12-905(a)(2), which provides that any sex offender serving a sentence or subject to community supervision on August 1, 1997 must register as a sex offender. In light of the court's conclusion in Kellar
that the registration requirement is "merely regulatory" and not "punitive," I do not believe there is any constitutionally suspect tension between the two statutes.
In this regard, I should note that A.C.A. § 12-12-905(b) provides as follows with respect to expungements issued pursuant to the statutory scheme currently applicable to first offenders:
 A person who has been adjudicated guilty of a sex offense and whose record of conviction will be expunged under the provisions of §§ 16-93-301 — 16-93-303 is not relieved of the duty to register.
This statute is clearly based on a presumption that no constitutional bar exists to requiring an offender whose sentence has been expunged to register as a sex offender. Statutes are presumed constitutional, and the burden of proving otherwise is on the challenger of the statute. Ford v.Keith, 338 Ark. 487, 996 S.W.2d 20 (1999); ACW, Inc. v. Weiss,329 Ark. 302, 947 S.W.2d 770 (1997). In my opinion, this statute is in all respects consistent with the above recited A.C.A. § 12-12-905(a)(2), which would require anyone currently serving a sentence under the since repealed Act to register as a sex offender upon his release from incarceration.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB/JHD:cyh
[1] The Act, which was codified at A.C.A. §§ 16-93-501 through 510 (1987), was repealed by identical Acts 1993, Nos. 531 and 548, § 11 and its provisions were substantially replaced by A.C.A. § 16-93-1207(b) (Supp. 2003). As a general proposition, the sentencing law in effect at the time the offender committed a crime will control in determining the court's sentencing options. Specifically with respect to the ongoing applicability of the Act to offenders sentenced under its terms, one of my predecessors noted in Ark. Op. Att'y Gen. No. 97-160:
 It is well established that sentencing must be in accordance with the statutes in effect at the time of the commission of the offense. Cody v. State, 326 Ark. 85, 929 S.W.2d 159 (1996); State v. Townsend, 314 Ark. 427, 863 S.W.2d 288 (1993); see also Bosnick v. Lockhart, 283 Ark. 206, 672 S.W.2d 52 (1984), supplemental opinion on denial of rehearing, 283 Ark. 209, 677 S.W.2d 292 (1984) (parole status governed by the parole statute in effect at the time the crime was committed). Individuals sentenced under the Alternative Service Act are thus eligible for expungement in accordance with the version of the Act under which they were sentenced. Id.; see Irvin v. State, 301 Ark. 416, 784 S.W.2d 763 (1990). Accordingly, in order to determine the procedure for the expungement of a record for an individual sentenced pursuant to the Alternative Service Act, the version of the Act under which the individual was sentenced must be examined.
[2] The board initially exercising such authority pursuant to Act 378 of 1975 was the Commission on Community-Based Rehabilitation. See former A.C.A. § 16-93-505. Pursuant to Acts 1989, No. 937, § 1, both the State Board of Pardons and Paroles and the Commission of Community-Based Rehabilitation were abolished and their powers were transferred to the State Board of Parole and Community Service. Pursuant to identical Acts 1993, Nos. 530 and 547, the State Board of Parole and Community Service was redesignated the Post Prison Transfer Board.
[3] Former A.C.A. § 16-93-507(b)(3) provided that if an offender violated the terms of his sentence, the court might revoke the sentence in accordance with the procedures for revoking probation. See A.C.A. §§5-4-309 and -310.
[4] Your reported practice of yourself directing the expungement of an Act 378 participant's conviction is consistent with the provisions of former A.C.A. § 16-93-510(a), which identifies the Director as the appropriate official to undertake this task. However, unaccountably, Section VIII of Post Prison Transfer Board's Manual of Policies and Procedures directs that the chairperson of the Post-Prison Transfer Board shall issue a certificate of expungement when an Act 378 participant has completed his sentence.
With respect to the scope of the duty to certify an expungement, one of my predecessors noted in Ark. Op. Att'y Gen. No. 97-160:
 Although the Alternative Service Act has been amended several times, it is my opinion that expungement pursuant to the Act remains a "ministerial duty" to be completed by the party or agency (or its successor) designated in the particular version under which the individual was sentenced. The Alternative Service Act clearly provides that the designated entity "shall direct that the record of the eligible offender be expunged" and that the eligible offender shall be entitled to a certificate of expungement.
[5] Section 16-93-604 designates only certain felonies as triggering this sentencing requirement. You do not state in your hypothetical what felonies the offender committed.
[6] In the construction of statutes, a general statute normally does not apply where there is a specific statute governing a particular subject matter. Donoho v. Donoho, 318 Ark. 637, 887 S.W.2d 290 (1994). Moreover, A.C.A. § 16-93-604, which was enacted pursuant to Acts 1977, No. 93, § 2, marks a later statement of the legislature's intent than do the provisions of Act 378 of 1975. Ordinarily, the provisions of an act adopted later in time repeal the conflicting provisions of an earlier act. Daniels v. City of Fort Smith, 268 Ark. 157, 594 S.W.2d 238 (1980). Although I am unaware of any authority that directly addresses this issue, logic suggests that if resentencing were to proceed as mandated by16-93-604, the formerly applicable sentencing provisions of the Act, including the possibility of expunging an eligible offender's record upon the completion of his sentence, would no longer apply.
[7] The referenced "commission" is the Commission on Community-Based Rehabilitation. See former A.C.A. § 16-93-505. Pursuant to Acts 1989, No. 937, § 1, both the State Board of Pardons and Paroles and the Commission of Community-Based Rehabilitation were abolished and their powers were transferred to the State Board of Parole and Community Service. Pursuant to identical Acts 1993, Nos. 530 and 547, the State Board of Parole and Community Service was redesignated the Post Prison Transfer Board.
[8] The referenced "director" is the Director of the Department of Correction. See former A.C.A. § 16-93-502(4).
[9] The procedural requirement of a hearing to revoke a suspension or probation is set forth at A.C.A. §§ 5-4-309 (Supp. 2003) and -310 (Repl. 1997). With respect to the timing of any such hearing, A.C.A. §5-4-309(e) provides:
 The court may revoke a suspension or probation subsequent to the expiration of the period of suspension or probation, provided before expiration of the period:
 (1) The defendant is arrested for violation of suspension or probation;
 (2) A warrant is issued for the defendant's arrest for violation of suspension or probation; or
(3) The defendant has been:
 (A) Issued a citation in lieu of arrest under Rule 5 of the Arkansas Rules of Criminal Procedure for violation of suspension or probation; or
 (B) Served a summons under Rule 6 of the Arkansas Rules of Criminal Procedure for violation of suspension or probation.
[10] Subsection 16-93-509(a)(1) of the former Code provided that the Director of Correction, upon the approval of the Commission on Community-Based Rehabilitation, might conditionally transfer an eligible offender to an alternative program.
[11] In this regard, I should note that the terms of the Act that restrict a prosecutor's discretion in negotiating a plea pursuant to Ark. R.Crim. Proc. 25.1 (2004) are not mirrored in various other expungement statutes. Under the terms of various other statutory schemes, when a candidate for expungement violates the conditions of his initial sentence, the trial court, in accordance with an approved plea agreement, is free to resentence him imposing terms that would preclude expunging the offender's record. See, e.g., A.C.A. §§ 5-64-407;16-93-303; and 16-93-1206 and -1207 (all acknowledging that an offender's violation of sentencing terms that, if successfully completed, might have entitled him to an expungement of his record, will allow the court to proceed with resentencing as though the offender had never been potentially eligible for an expungement of his record). Compare Edwardsv. State, 70 Ark. App. 127, 130, 15 S.W.3d 358 (noting that whereas expunging the record of an eligible offender who has completed his sentence is mandatory under the Act, under the different scheme set forth at A.C.A. § 16-93-1207, even if an offender successfully completes his sentence, the court retains discretion to order an expungement or not). Under statutory schemes of the sort recited, I believe a prosecutor could negotiate, and the court could approve, a plea agreement that provided that if the offender violated any laws during the term of his sentence, he would no longer be eligible to have his record expunged.
[12] Since the enactment of Acts 1977, No. 482, § 3, the legislature has required that "[t]he court shall provide as an express condition of every suspension or probation that defendant not commit an offense punishable by imprisonment during the period of suspension or probation."See A.C.A. § 5-4-303(b) (Repl. 1997). I believe the violation of such a condition would support the court in revoking an offender's sentence under the Act. However, for the reasons discussed above, unless an applicable rule or regulation expressly authorized doing so, I do not believe it would support denying the offender an expungement of his conviction upon the completion of his revised sentence.